UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILDA ARAUJO, LUC HOLIE and JUBILEE FIRST
AVENUE CORPORATION,

                                        Plaintiffs,

                    -against-

ERIC MACAIRE.

                                        Defendant.

**Case No. 16-cv-09934
(PAE) (KNF)**

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

KELLNER HERLIHY GETTY & FRIEDMAN, LLP.
Thomas Vandenabeele
Michelle Martin
470 Park Avenue South, 7th Floor North
New York, New York 10016
*Attorneys for Plaintiffs Ilda Araujo, Luc Holie and
Jubilee First Avenue Corporation*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii-iv

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS .................................................................... 2

ARGUMENT ........................................................................................ 7

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
      DETERMINING AND MR.MACAIRE'S EQUITABLE
      SHARE OF LIABILITY UNDER THE FRANCO
      SETTLEMENT AND DIRECTING HIM TO PAY SUCH
      EQUITABLE SHARE .................................................................... 8

      A. Mr.Macaire is Liable in His Individual Capacity for
         Payment of at Least Part of The Franco Settlement .................. 8

      B. The Unambiguous Written Agreement Defeats
         Mr.Macaire's Claim of a Separate Oral Agreement
         Exonerating Him From Payment ............................................... 9

      C. Mr.Macaire Has Failed to Corroborate His Self-
         Serving Assertion That Only Jubilee Should Pay ..................... 10

      D. This Court Should Determine That Mr.Macaire Must
         Pay 75% Of The Settlement Sum ............................................. 11

II.   MR.MACAIRE BREACHED HIS FIDUCIARY DUTY BY
      USING OVER $200,000 OF CORPORATE MONEY TO HIS
      EXCLUSIVE BENEFITS AND TO THE DETRIMENT OF
      JUBILEE ....................................................................................... 12

      A. Mr.Macaire As President and Shareholder of Jubilee
         Owed a Fiduciary Duty to Plaintiffs ......................................... 12

      B. Mr.Macaire's Breach his Fiduciary Duties by Using
         Jubilee's Funds for His Personal Benefit .................................. 13

         1. Mr.Macaire depleted Jubilee's Corporate
            account of more than $200,000 to his own
            benefits ................................................................................ 13

i

2.  Mr.Macaire lied to plaintiffs Ms.Araujo and
Mr.Holie about the purpose and destination
of payments he made with corporate funds .................. 15

C.  As a Result of Mr.Macaire's Breaches, Plaintiffs'
Suffered Significant Damages ....................................................... 16

III.    MS.ARAUJO AND MR.HOLIE DID NOT BREACH ANY
AGREEMENT ................................................................................. 16

A. Jubilee's Board of Directors Had a Statutory Right to
Remove and Terminate Mr.Macaire As President and
Employee of Jubilee .......................................................... 16

B.  The November 7, 2012 Email Is Not a Correct ........................... 18

C.  Mr.Macaire Is Prohibited by The Parole Evidence
Rules From Using The November 7,2012 Email to
Impose Obligations on Ms.Araujo and Mr.Holie Not
Mandated by The Agreements ....................................................... 20

IV.    MS.ARAUJO AND MR.HOLIE DID NOT INTERFERE WITH ANY
CONTRACT ................................................................................... 21

V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING
MR.MACAIRE'S THIRD AND FOURTH COUNTERCLAIMS ................... 24

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

Page

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 995-96
(2d Cir. 1983) .................................................................................................... 16

*AGCS Mar. Ins. Co v World Fuel Servs.*,187 F. Supp. 3d 428, 432
(S.D.N.Y. 2016) ................................................................................................ 8

*Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001) ................................................... 21,22,23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ........................................ 7

*Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, 2015 U.S.
Dist. LEXIS 193133 (S.D.N.Y. 2015) .............................................................. 22,24

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) ............... 18,19

*Celotex*, 477 U.S. at 323 ..................................................................................... 11

*Coastal Sheet Metal Corp. v. Vassallo*, 904 N.Y.S.2d 62 (1st Dept. 2010) ............... 14

*Connolly v. Calvanese*, 515 F. App'x 62, 62 (2d Cir. 2013) ...................................... 7

*Diego Franco et al. v. Jubilee First Avenue Corp. et al.* Index No. 14-cv-
07729 .............................................................................................................. 6,10

*Estrada v. Dugow*, 2016 U.S. Dist. LEXIS 44284 *18 (S.D.N.Y. 2016) ................... 14

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004) .................................................. 20

*Gully v. NCUA Bd.*, 341 F.3d 155, 165 (2nd Cir. 2003) ......................................... 13

*Horowitz v. Nat'l Gas & Elec.*, LLC, 2018 U.S. Dist. LEXIS 163285
(S.D.N.Y. 2018) ................................................................................................ 21,23

*Kikis v. McRoberts Corp.*, 225 A.D.2d 455 (1st Dep't 1996) .................................. 17

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) ...................... 21

*Ingle v. Glamore Motor Sales, Inc.*, 538 N.Y.S.2d 771, 774 (1989) ........................ 21,22

*Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172 (2d Cir. 2001) ................. 20

*Limmer v. Medallion Group, Inc.*, 75 A.D.2d 299, 303 (1st Dep't 1980) ................ 13

*Maniolos v. United States*, 741 F. Supp. 2d 555, 556 (S.D.N.Y. 2010) ................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
(1986) ............................................................................................................... 7

*Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928) .................................................... 13

*Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543
(2d Cir. 1994) ................................................................................................... 16

*Miller v. Tawil*, 165 F. Supp. 2d 487 (S.D.N.Y. 2001.) .......................................... 19

*Pokoik v. Pokoik*, 115 A.D.3d 428, 429 (1st Dep't 2014) ....................................... 12,14

*Quaker Hills, LLC v Pac. Indem. Co.*, 728 F.3d. 171, 178 (2nd Cir. 2013) .............. 8

iii

*Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484
 (2d Cir. 1999) ................................................................................... 20

*Roe v. City of N.Y.*, 232 F. Supp. 2d 240, 252 (S.D.N.Y. 2002) ............................ 8

*Senno*, 812 F. Supp. 2d at 467–68 ................................................................. 8

*Siverio v. Lavergne*, 1991 U.S. Dist. LEXIS 14609, 1-2 (S.D.N.Y. 1991)................. 13

*Smalley v. Dreyfus Corp.*, 853 N.Y.S.2d 270 (2008) .................................... 22

 *Soley v. Wasserman*, 823 F. Supp 2d 221, 232 (S.D.N.Y 2011) ............................ 16

*Teachers Ins. & Annuity Asso. v. Tribune Co.*, 670 F. Supp 491
(S.D.N.Y. 1987)................................................................................. 18,19

*Washington Heights-West Harlem-Inwood Mental Health Council, Inc. v.
District 1199, Nat'l. Union of Hosp. & Health Care Employees*, 748 F.2d
105, 107 (2d Cir. 1984)........................................................................ 18

*W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)........................... 10

## STATUTES, RULES, & OTHER AUTHORITIES

*11 Richard A. Lord, Williston on Contracts* § 33:1, at 541 (4th ed. 1999) ............... 20

Fed. R. Civ. P. 56(a) ............................................................................... 7

N.Y. Bus. Corp. Law § 614 ....................................................................... 17

N.Y. Bus. Corp. Law § 702 ....................................................................... 18

N.Y. Bus. Corp. Law § 708 ....................................................................... 17

N.Y. Bus. Corp. Law § 708(c) .................................................................... 17

N.Y. Bus. Corp. Law § 715(a) .................................................................... 17

N.Y. Bus. Corp. Law § 715(h) .................................................................... 13

N.Y. Bus. Corp. Law § 716 ....................................................................... 17

N.Y. Bus. Corp. Law § 716(a) .................................................................... 17

N.Y. Bus. Corp. Law § 716(b) .................................................................... 17

N.Y. Bus. Corp. Law § 717(a).................................................................... 12,13

## PRELIMINARY STATEMENT

Plaintiffs Ilda Araujo, Luc Holie and Jubilee First Avenue Corporation ("Jubilee") respectfully submit this memorandum of law in support of their motion for partial summary judgment on Plaintiffs' First Cause of Action for a declaratory judgment, Second Cause of Action for breach of fiduciary duty, and dismissing all of Defendant Eric Macaire's counterclaims, and granting such other and further relief as the Court may deem proper.

It is undisputed that on November 16, 2016, this Court approved a settlement ("the Settlement") between the parties in the case of *Diego Franco et al. v. Jubilee First Avenue Corporation et al.* Case No. 16-cv-7729 whereby Ms. Araujo, Jubilee, and Mr. Macaire (the defendants in that lawsuit) agreed to pay to the plaintiffs in that case the sum of $175,000.00. At his deposition in this case, Mr. Macaire authenticated his signature on the Settlement, and this Court can rule as a matter of law that the Settlement does not address the issue of the apportionment of Ms. Araujo, Jubilee, and Mr. Macaire's obligations to pay the Settlement sum of $175,000.00. Mr. Macaire does not dispute that he has refused to pay, and that he has not paid any money under the Settlement.

Undisputed evidence show that between May 2012 and December 2015, Mr. Macaire has, by far, exceeded the allowance provided for in his employment agreement by $261,303.98 in personal expenses that Mr. Macaire has not and cannot explain. In addition, documents produced by third party American Express prove that Mr. Macaire also used $114,825.30 of Jubilee's corporate funds through Jubilee's Citibank account ending 3039 to pay for the American Express card of Jubilee Inc., a corporation fully owned by Mr. Macaire, inactive since 2012 and dissolved by proclamation on June 29, 2016.

Defendant's First and Second Counterclaims for breach of contract, and Fifth Counterclaim for Tortious Interference with Contract are all premised on a November 7, 2012 email Plaintiffs Ms. Araujo and Mr. Holie allegedly did not comply with, but which is not a contract. Instead, the parties have subsequently signed unambiguous employment agreements and corporate resolutions which are the sole enforceable documents. In addition, Mr. Macaire ignores that his removal and termination as officer and employee of Jubilee constituted acts of Jubilee's Board of Directors, not the shareholders, under New York Business Corporation Law. Therefore, no issues of fact exist and this Court should dismiss Mr. Macaire's First, Second and Fifth Counterclaims as a matter of law. Further, because documentary evidence show that any corporate expense made by Ms. Araujo and Mr. Holie was either for a legitimate corporate purpose, or part of the allowance provided for in their employment agreements, Mr. Macaire's Third and Fourth counterclaims must be dismissed.

Finally, because the remaining sixth counterclaim for an accounting is premised upon the five other counterclaims ("to determine the exact amount owed by Ms. Araujo and Mr. Holie to Mr. Macaire or Jubilee Corp.," DE#51 ¶77), if the Court dismisses Counterclaims 1 through 5, then it should grant summary judgment dismissing Counterclaim 6 for an accounting as moot.

## STATEMENT OF FACTS

### Jubilee on 54th street

Defendant Eric Mr. Macaire opened a restaurant located at 347 E. 54th Street, New York, New York 10022 in the name of "Jubilee" in 1994 ("Jubilee on 54th") (See Answer and Counterclaims DE#51¶¶19-20). The restaurant closed in May 2012 (*Id.*). At all times, Jubilee on 54th was operated by a corporation called Jubilee Inc. (*Id.*) Mr. Macaire owned 100% of Jubilee Inc. from the restaurant's opening until approximately 2002, when he transferred 40% of his stock ownership to third party Pascal Petiteau. Around 2009, Mr. Macaire reacquired 100% ownership of Jubilee Inc. (*Id.* and Mr. Macaire Depo. Vandenabeele Exh. 3 at 29:20-30:7).

In her Opinion and Order granting plaintiffs partial summary judgment in *Diego Franco et al. v. Jubilee First Avenue Corporation et al.* Case Number 16-cv-7729 ("Franco Case"), including "in regard to (1) defendant Eric Macaire's status as an employer at both Jubilee locations", citing to Mr. Macaire's deposition in that case, Magistrate Judge Sarah Netburn found: "The following facts are undisputed…Throughout its 18 years of operation, Mr. Macaire had ultimate control of Jubilee, Inc. and was the sole employer." (Ex. 2 to Vandenabeele Decl. at p. 2.) He had the authority to hire, fire and discipline employees at Jubilee on 54th. (*Id.*) Mr. Macaire also determined employees' rates of pay and signed their paychecks at that restaurant. (*Id.*) Mr. Macaire was at all relevant times solely responsible for hiring management employees at Jubilee on 54th. (*Id.*) Mr. Macaire also instructed managers regarding their supervisory duties. (*Id.*) In the instant case, Mr. Macaire testified that he testified truthfully at his deposition in the Franco Case. (Ex. 3 to Vandenabeele Decl. at 24:3-24-9; and at 40:16-40:19.)

Ms. Araujo, who had previously worked for Mr. Macaire at another restaurant, was hired to work as a floor manager at Jubilee on 54th in 2005. (Answer and Counterclaims DE#51 at ¶¶21-22). She served in that position until Jubilee on 54th closed in May 2012 (Araujo Decl. at ¶3 referring to Exhibits 3 to 6 of Vandenabeele Decl.) Ms. Araujo was not authorized to hire or fire employees at Jubilee. (*Id.*) She was not authorized to discipline employees (*Id.*). The Court in the Franco Case observed that "the defendants *[including Mr. Macaire]* assert that Ms. Araujo worked only as the floor manager at Jubilee on 54th and had no authority to hire, fire or promote employees […] handled the payroll subject to Mr. Macaire's oversight and supervision, […] and that when employees informed her of any issues with their paychecks, Ms. Araujo reported those problems to Mr. Macaire."

### Jubilee on First Avenue

When Jubilee on 54th closed, Mr. Macaire, Ms. Araujo and Mr. Holie opened a new restaurant in May 2012 located at 948 1$^{st}$Avenue, New York, NY 10022 ("Jubilee on First"). Jubilee on First is owned and operated by Jubilee. (Answer and Counterclaims DE#51 at ¶8). Since the creation of Jubilee on November 30, 2011, Mr. Macaire, Ms. Araujo and Mr. Holie

have each owned one third of the shares of Jubilee. (Ex. 9&10 to Vandenabeele Decl.; Ex. 5 to Vandenabeele Decl. at 17:7-22; and at 57:18-22.)

On November 7, 2012, Mr. Macaire sent an email ("November 7, 2012 Email") to Ms. Araujo and Mr. Holie summarizing his understanding of verbal conversations that he, Mr. Holie and Ms. Araujo had, including the future preparation and execution of contract documents setting forth the various rights and obligations of the shareholders. (DE#62-17.) Mr. Macaire's email is unambiguous that a contract will need to be subsequently drafted: "Consequently, I would like to have our contract stipulate (in the employment letter) that I am Public Relation[s] Director…." (*Id*. at p.7) Mr. Macaire added "if you are OK with all this…. I can draft these changes. Show a proof for you to read before sending it to Alex…. and we can have our contract finished and signed." (*Id*.) Ms. Araujo never even responded to that email. (*Id*.) Twenty minutes later, Mr. Macaire sent another email to Mr. Holie and Ms. Araujo requesting that they review the draft letter to Alexander Wolf, Esq. who was Mr. Macaire, Mr. Holie and Ms. Araujo's counsel in charge of drafting corporate documents regarding Jubilee. In that email, Mr. Macaire added "let me know if it's ok with you and I will send it to him." (Ex. 1 to Vandenabeele Decl.) That letter that Mr. Macaire drafted did not include any prohibition against Jubilee's shareholders' right to combine their shares. (*Id*.) Later on November 7, 2012, Defendant sent an email to Mr. Wolf requesting that he make changes to the corporate resolutions according to his draft which did not include the alleged prohibition against shareholders' right to combine their shares. (DE#64-10.)

Subsequently, Mr. Macaire, Mr. Holie and Ms. Araujo signed the corporate resolutions of Jubilee's board of directors on November 29, 2012 and employment agreements on November 27, 2012 ("Agreements") representing the parties' final agreement, which contain some of the elements in the November 7, 2012 Email, but do not contain others because Ms. Araujo and Mr. Holie never agreed to them. (Ex. 13&14 to Vandenabeele Decl.) These are the only valid agreement that finalize and formalize the parties' negotiations in the fall of 2012 (Araujo Decl. at ¶12). At his deposition, Mr. Macaire authenticated each of these documents (Ex. 3 to

4

Vandenabeele Decl. at 113:19-114:18; and 121:6-122:6). In the November 29, 2012 corporate resolutions, Jubilee's Board of Directors appointed Mr. Macaire, Ms. Araujo and Mr. Holie as officers of Jubilee and authorized the directors to employ a chef, general manager and publich relations director for Jubilee. (Ex. 13 to Vandenabeele Decl.) Those resolutions do not mention any prohibition against shareholders from combining their shares against another shareholder, and clearly state that Ms. Araujo, Mr. Holie, and Mr. Macaire each own one third of the shares of Jubilee "upon its incorporation." (*Id*.) Mr. Macaire never owned 50% of Jubilee' shares. As Mr. Macaire acknowledged himself in his November 7, 2012 Email, Mr. Holie and Ms. Araujo did not understand what shares of a company mean: "[…] until yesterday you misunderstood that shares of a company represents profit shares […]" (*supra* DE#62-17.)

Ms. Araujo testified at her deposition that Mr. Macaire, Mr. Holie and Ms. Araujo each had "the right to $2,000 a month" (Ex. 19 to Vandenabeele Decl. 267:20-21.) This is consistent with Mr. Macaire, Mr. Holie and Ms. Araujo's employment agreements which provide, as part of their benefits, that they have a "personal expense allowance" of $2,000 per month. (Ex. 14 to Vandenabeele Decl.) Mr. Macaire testified at his deposition that if he, Ms. Araujo or Mr. Holie were to spend more than $2,000 a month, it would not necessarily be a violation "because you can defer it". (Ex. 3 to Vandenabeele Decl. at 161:17-24) This is coherent with Ms. Araujo's testimony that if "one month we don't spend 2,000, the next month we can spend 4,000." (Ex. 19 to Vandenabeele decl. at 305:6-8.) Ms. Araujo and Mr. Holie have always complied with this $2,000 allowance, and have not used this employment benefit since at least December 1, 2016. (*Id*. at 303:14.)

By contrast over the years Mr. Macaire harmed Jubilee, Ms. Araujo and Mr. Holie by treating Jubilee as his piggy bank, repeatedly taking Jubilee's money for his personal expenses. Between May 2012 and December 2015, Defendant has, by far, exceeded the allowance provided for in his employment contract by at least $261,303.98 in personal expenses, including $114,825.30 of Jubilee's corporate funds through Jubilee's Citibank account ending 3039 to pay for the American Express card of Jubilee Inc., a corporation fully owned by Mr. Macaire,

5

inactive since 2012 and dissolved by proclamation on June 29, 2016. (Ex. 1 to Araujo Decl.)
Those repeated misuses of the Jubilee's money that Ms. Araujo and Mr. Holie were working so
hard to gain created a lot of tension over the years (Araujo Decl. at ¶¶14,31.) By contrast
corporate expense made by Ms. Araujo and Mr. Holie was either for a legitimate corporate
purpose, or part of the allowance provided for in their employment agreements, and Defendant
cannot therefore prove otherwise. (Ex. 1 to Araujo Decl.)

### The Settlement of the Labor Dispute

On September 24, 2014, five former employees of Jubilee on 54th and Jubilee on First
between 2005 and 2013 brought an action before the United States District Court for the
Southern District of New York against Jubilee, Mr. Macaire, and Ms. Araujo for damages,
alleging violations of the Fair Labor Standards Act, New York Labor Law, and related
regulations. *Diego Franco et al. v. Jubilee First Avenue Corporation et al.* Case Number 16-cv-
7729. (Answer and Counterclaims DE#51 at ¶61).

On November 16, 2016, the Court approved a Settlement Agreement and Release
("Settlement") entered between the parties to the Franco Case (Ex. 10 to Vandenabeele Decl.)

Under the Settlement, Jubilee, Ms. Araujo and Mr. Macaire (the defendants in that
lawsuit) agreed to pay to the Franco plaintiffs $175,000 through several installments
("Settlement Sum") in full and final satisfaction of all issues between the parties in that lawsuit.
The Settlement does not address the issue of the apportionment of the obligations of Jubilee, Mr.
Macaire, and Ms. Araujo to pay the Settlement Sum (*Id*.) At his deposition, Mr. Macaire
authenticated his signature on the Settlement and does not dispute that he has refused to pay, and
that he has not paid, any money under the Settlement. (Ex. 3 to Vandenabeele Decl. at 74:4-7;
and 82:16-18.)

### The Removal and Termination of Mr. Macaire As Officer and Employee and of Jubilee

On November 17, 2016, Ms. Araujo, as treasurer of Jubilee, sent Mr. Macaire a notice of
a Board of Directors meeting to be held on November 28, 2016 (Ex. 8 to Araujo Decl.) Mr.
Macaire requested an adjournment to December 1, 2016, which was granted. (*Id*.). Nonetheless,

Mr. Macaire decided not to attend the meeting. (DE#43-7 at ¶8.) The Board of Directors, by a majority vote, terminated Mr. Macaire as public relations director in charge of business development, marketing and legal matters, and removed him from the office of president of Jubilee. (DE#62-4.) These resolutions also state that a shareholders' meeting will be held on January 3, 2017 (*Id.*), which was duly noticed for January 3, 2017 (DE#43-7 at ¶18.) Mr. Macaire admitted at his deposition that he knew of the shareholders meeting to be held on January 3, 2017, that at that time he was represented by counsel, but that he chose not to attend. (Ex. 3 to Vandenabeele Decl. at 277:2-17.) At that January 3, 2017's shareholder's meeting, Ms. Araujo and Mr. Holie were duly elected as the sole directors of Jubilee (DE#64-14.)

On December 23, 2016, Plaintiffs brought the instant action. (Ex. 4 to Vandenabeele Decl.)

## ARGUMENT

Summary judgment is appropriate where the pleadings, the discovery materials, and any affidavits show, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Connolly v. Calvanese,* 515 F. App'x 62, 62 (2d Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006), quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-

finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

I.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT DETERMINING AND MR. MACAIRE'S EQUITABLE SHARE OF LIABILITY UNDER THE FRANCO SETTLEMENT AND DIRECTING HIM TO PAY SUCH EQUITABLE SHARE**

   A.   **Mr. Macaire is Liable in His Individual Capacity for Payment of at Least Part of The Franco Settlement**

There is no genuine dispute as to any material fact relevant to Plaintiffs' First Cause of Action for a Declaratory Judgment, and it is thus appropriate for this Court to issue a ruling as a matter of law. *Roe v. City of N.Y.*, 232 F. Supp. 2d 240, 252 (S.D.N.Y. 2002) ("In determining a motion for summary judgment that is filed in the context of a declaratory judgment action, the same standard is applied as in any other action.") "[T]he proper interpretation of language in a contract is a question of law." *Ross v. Thomas*, 728 F. Supp. 2d 274, 281 (S.D.N.Y. 2010), aff'd, 460 F. App'x 16 (2d Cir. 2012). "[S]ummary judgment is an appropriate process for the enforcement of unambiguous contracts because there is no material dispute of fact for the court to resolve." *Id*. at 281; see also *AGCS Mar. Ins. Co. v World Fuel Servs.,*187 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) ("When contract language is unambiguous, a district court may construe it as a matter of law and grant summary judgment accordingly.); *Quaker Hills, LLC v Pac. Indem. Co.*, 728 F.3d. 171, 178 (2nd Cir. 2013) (Second Circuit affirming summary judgment for a declaratory judgment on Defendant's liability to Plaintiff under an insurance contract).

In their First Cause of Action, Plaintiffs seek a declaratory relief pursuant to 28 U.S.C. § 2201 requesting a judgment determining the equitable share of Jubilee, Ms. Araujo and Mr. Macaire's liability under the Franco Settlement and directing them to pay the entire amount of such equitable share. (Complaint DE#1 at ¶1).

It is undisputed that on November 16, 2016, this Court approved the Franco Settlement whereby Ms. Araujo, Jubilee and Mr. Macaire agreed to pay to the Franco plaintiffs the sum of $175,000.00. (Ex. 10 to Vandenabeele Decl.) At his deposition in the instant case, Mr. Macaire authenticated his two signatures on the Settlement "as the president of Jubilee First Avenue Corp. and [my] signature as Eric Mr. Macaire" (Ex. 3 to Vandenabeele Decl. at 72:20-76:2; and at 74:4-6)). See also the two signatures on page 12 of the Franco Settlement (Ex. 10 to Vandenabeele Decl.) The first and third "whereas" clauses of the Settlement explicitly define Mr. Macaire as one of the defendants, and one of the parties to the settlement: "WHEREAS, Diego Franco […] commenced an action against Jubilee First Avenue Corporation, Ilda Araujo and Eric Macaire." (*Id*.) "WHEREAS, Plaintiffs and Defendants (collectively hereinafter referred to as the "Parties") desire to fully and finally resolve and settle in full […] (*Id.*)

Section I(a) of the Franco Settlement reads: "Defendants agree to pay to Plaintiffs the sum of One Hundred and Seventy-Five Thousand Dollars and Zero Cents ($175,000.00) (the "Settlement Sum") in full and final satisfaction of all issues between the Parties." (*Id.* at p. 2). This Court can rule as a matter of law that under the Franco Settlement, Ms. Araujo, Jubilee, and Mr. Macaire are collectively responsible for paying the Settlement amount and that the Franco Settlement does not address the issue of the apportionment of Ms. Araujo, Jubilee and Mr. Macaire's obligations to pay the Settlement sum of $175,000.00 (*id.*).

### B.  The Unambiguous Written Agreement Defeats Mr. Macaire's Claim of a Separate Oral Agreement Exonerating Him from Payment

Mr. Macaire admitted that he has not paid any money under the Settlement (Ex. 3 to Vandenabeele Decl. at 82:16-17). Instead, he testified that it was understood that it was a "corporate matter." (*Id.*) "Where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external

evidence. *Maniolos v. United States*, 741 F. Supp. 2d 555, 556 (S.D.N.Y. 2010). The rule that

evidence "outside the four corners of the document as to what was really intended but unstated or

misstated" may not be considered in interpreting a contract is supported by strong public policy

considerations. *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 162 (1990).

Furthermore, the Settlement contains a "No Other Representations or Agreements; Entire

Agreement" clause whereby

> there is no other agreement or understanding, written or oral, expressed or implied,
> among the Parties hereto concerning the subject matter hereof, except the agreement set
> forth in this Agreement. This Agreement … supersedes and replaces all prior negotiations
> and agreements, proposed or otherwise, written or oral, concerning the subject matter
> hereof. (*Id.* Section 19).

Therefore, this Court should disregard Mr. Macaire's challenge of the plain language of

the Franco Settlement, which he signed.

### C.  Mr. Macaire Has Failed to Corroborate His Self-Serving Assertion That Only Jubilee Should Pay

At his deposition, when asked if there were any documents supporting his position that

only Jubilee should pay for the Franco Settlement, Mr. Macaire testified: "I don't know of any

other documents." (Ex. 3 to Vandenabeele Decl. at 86:7-8.) A request was made at the deposition

that Mr. Macaire produce any documents supporting his claim that the Franco Settlement was a

corporate matter. Counsel for Mr. Macaire responded "I will take it under advisement. Follow up

in writing […]" (*Id*. at 83:24-84-7). On December 22, 2017, Plaintiffs served a Third Request for

Production seeking, *inter alia,* "True copies of all documents that could support the proposition

that it was always understood that the settlement of the case *Franco et al. v. Jubilee et al.* 14-

CV-07729-SN was a corporate matter and that Jubilee First Avenue Corporation was responsible

for the entire amount of that settlement." It is undisputed that Mr. Macaire did not serve a written

response and objections to plaintiffs' Third Request.[1] "The moving party is entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. Therefore, even if this Court was willing to consider extrinsic evidence, because Mr. Macaire produced none, summary judgment should be rendered in favor of the movants.

It is thus appropriate for this Court to resolve Plaintiffs' First cause of Action for a declaratory Judgment by summary judgment determining the equitable share of liability of the parties to the Settlement.

### D.  **This Court Should Determine That Mr. Macaire Must Pay 75% Of the Settlement Sum**

The five former employees of Jubilee Inc. and Jubilee who brought the Franco case worked a combined total of ten years for Jubilee Inc., and a combined total of three years for Jubilee:

- Diego Franco was employed by Jubilee on 54th from 2005 to 2011, and by Jubilee on First between July 2, 2012 and July 17, 2014.
- Juan Juarez was employed by Jubilee on 54th, between 2007 and 2010.
- Mustapha Babaci was employed by Jubilee on 54th, for approximately one year, ending in 2010.
- Zakon Nouhou was employed by Jubilee on First between December 20, 2012 and February 10, 2013.
- Yonnia Sebbag was employed by Jubilee on First between May 20, 2013 and October 4, 2013.

In order to prevent a default, Jubilee has paid the amounts due under the settlement each time an installment payment became due. (Araujo Decl. at ¶30.) The Settlement has now been

---

[1] While this Court ruled that no sanction was warranted, it found that: "The defendant's assertions that the third request for documents was superfluous and the plaintiffs abandoned their third request when they claimed they had everything they need to move for summary judgment are rejected as disingenuous, meritless, self-serving…" (Transcript of hearing held on April 17, 2019 as Ex. 20 to Vandenabeele Decl.)

paid in full, exclusively with Jubilee's funds. (*Id.*) As a result, in addition to paying for its equitable share, yet to be determined, Jubilee has in fact advanced the funds corresponding to Mr. Macaire and Ms. Araujo's equitable shares, which plaintiffs respectfully request this Court to determine.

In view of 1) his complete and exclusive control of Jubilee Inc. at all relevant times, 2) the fact that he serves as president of Jubilee at all relevant times; and 3) the fact that he had the ultimate authority to hire and fire employees until his termination on December 1, 2016, this Court should find that Mr. Macaire's equitable share under the Franco Settlement is no less than 75% of the Settlement Sum.

In view of Ms. Araujo's total absence of decision making power at Jubilee Inc., and of her status as manager at Jubilee, this Court should find that her equitable share under the Settlement is no more than 25% of the Settlement Sum.

## II.   MR. MACAIRE BREACHED HIS FIDUCIARY DUTY BY USING OVER $200,000 OF CORPORATE MONEY TO HIS EXCLUSIVE BENEFITS AND TO THE DETRIMENT OF JUBILEE

To establish a breach of fiduciary duty, the movant must prove the existence of a fiduciary relationship, misconduct by the other party, and damages directly caused by that party's misconduct. *Pokoik v. Pokoik,* 115 A.D.3d 428, 429 (1st Dep't 2014).

### A.   Mr. Macaire As President and Shareholder of Jubilee Owed a Fiduciary Duty to Plaintiffs

New York Business Corporation Law imposes a statutory fiduciary duty on directors and officers of corporations:

> A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances. N.Y. Bus. Corp. Law § 717(a).

An officer shall perform his duties as an officer in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances. N.Y. Bus. Corp. Law § 715(h).

"[Under N.Y. Bus. Corp. Law § 717(a)], "directors and officers are bound by their duty of undivided and unqualified loyalty to their corporations, a duty which encompasses good faith efforts to ensure that their personal profit is not at the expense of their corporations." *Limmer v. Medallion Group, Inc.*, 75 A.D.2d 299, 303 (1st Dep't 1980). "In such instances of self-dealing, defendants have the burden of demonstrating the fairness of the transactions." (*Id.*) "Under New York law, a director or officer of a corporation owes a fiduciary duty to the corporation." *Gully v. NCUA Bd.*, 341 F.3d 155, 165 (2nd Cir. 2003). "New York courts have long held fiduciaries to a standard 'stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is […] the standard of behavior." *Id.,* citing Judge Cardozo in *Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928). Directors, as fiduciaries, have an obligation to treat all shareholders fairly and evenly. *Siverio v. Lavergne,* 1991 U.S. Dist. LEXIS 14609, 1-2 (S.D.N.Y. 1991).

It is undisputed that Jubilee First Avenue Corporation is a New York corporation (Answer and Counterclaims DE#51 at ¶7). It is also undisputed that Mr. Macaire was a director of Jubilee and its president at all relevant time until December 1, 2016 (*Id.* at ¶5). Therefore, as a Director and an Officer of Jubilee, Mr. Macaire owed a fiduciary duty to Jubilee and to Mr. Holie and Ms. Araujo because they are shareholders of Jubilee.

**B. Mr. Macaire's Breach his Fiduciary Duties by Using Jubilee's Funds for His Personal Benefit**

    1. Mr. Macaire depleted Jubilee's corporate account of more than $200,000

A breach of fiduciary duty occurs is when a manager self-deals, or takes action for his own personal benefit. *Estrada v. Dugow,* 2016 U.S. Dist. LEXIS 44284 *18 (S.D.N.Y. 2016), citing *Pokoik v. Pokoik*, 982 N.Y.S.2d 67 (1st Dept. 2014) (self-dealing constitutes breach where

a fiduciary partner depleted capital accounts of the business); *Coastal Sheet Metal Corp. v. Vassallo,* 904 N.Y.S.2d 62 (1st Dept. 2010) (President of a corporation breached his fiduciary duty to the corporation by transferring assets to a new entity he created).

A review of the transactions on plaintiff Jubilee's bank account shows that between 2012 and 2015 Mr. Macaire has used his position as president of the company to improperly use $261,303.98 of corporate money for his exclusive benefits and to the detriment of the corporation (Ex. 1 to Araujo Decl.): On September 15, 2017, Plaintiffs served a second request for production of documents, requesting any documents demonstrating the business purpose, or providing any explanation, of the eighty-nine (89) personal transactions amounting to a total of $192,913.16 identified in documents produced by Plaintiffs. (DE#95-9.) Mr. Macaire, unable to explain a single of these eighty-nine (89) transactions, produced zero document in response to Plaintiffs' second request and stated that he has no responsive documents in his possession. (DE#95-8.)

At his deposition, Mr. Macaire could not explain the business purpose of any of these transactions. In an attempt to hide the fact that he used Jubilee's corporate money to pay for his personal expenses, Mr. Macaire misleadingly testified that he does not "have a personal American Express Card." (DE#57-2 at 170:7-8; 171:7-13; 173;16-19.) After showing Mr. Macaire evidence showing that he represented to plaintiffs that he has a personal American Express Card, he finally admitted that he possesses an American Express Card for Jubilee Inc., an inactive corporation he fully owns. (*Id.* at 191:11 to 192:4; 192:13-23; 193:18-20).

On December 22, 2017, plaintiffs served a Third Request for Production of Documents specifically requesting bank records relating to any American Express account(s) in the name of Jubilee Inc. from May 2012 to December 1, 2016, and invoices from Doodle LLC, a company

owned by Mr. Macaire, to Jubilee. (DE#95-8.) Mr. Macaire *has not responded, objected or produced any documents in response* to this Third Request. (DE#57.)

"Where directors are the immediate beneficiaries of the actions they take on the corporation's behalf, they bear the burden of proving that the action was justified by a valid business purpose." *Siverio,* 1991 U.S. Dist. LEXIS 14609 at 2. Since Mr. Macaire, who was president and director of Jubilee at all relevant time has not met his burden of justifying that the expenses listed in Exhibit 1 to Ms. Araujo's Declaration had a valid business purpose, this Court should find as a matter of law that the transactions had no business purpose, and that Mr. Macaire has therefore breached his fiduciary duties.

Plaintiffs had to serve a subpoena directly on American Express Company in order to obtain the bank records requested in Plaintiffs' Third Request for Production of Documents on November 10, 2017. (DE#95-8.) A comparative review of the bank statements of Jubilee Inc., a company fully owned by Mr. Macaire, produced by American Express Company and Jubilee's bank statements flatly show that Defendant used Jubilee's funds through Jubilee's Citibank account to pay for the American Express credit card of Jubilee Inc., an inactive corporation fully owned by Mr. Macaire, in the amount of $114,825.30. (Exh. 1 to Araujo Decl.)

In depleting the funds in Jubilee's bank account to his sole benefit, Mr. Macaire has engaged in self-dealing, breached his fiduciary duties to plaintiffs.

> 2. Mr. Macaire lied to plaintiffs Ms. Araujo and Mr. Holie about the purpose and destination of payments he made with corporate funds

Mr. Macaire has further breached his fiduciary duties owed to plaintiffs, by intentionally lying to Ms. Araujo and Mr. Holie about the purpose and destination of payment he made when he was president and a director of Jubilee with corporate payment. Specifically, Mr. Macaire told Ms. Araujo and Mr. Holie that the recurring payments for Doodle, LLC were necessary to pay

for storage expenses of Jubilee (Araujo Decl. at ¶18.) However, Jubilee never had a storage or signed any storage contract. Doodle, LLC was in fact a vehicle created by Mr. Macaire to siphon off corporate funds to his wife for a total of $56,497.20 (Id.; Exh. 1 to Araujo Decl.)

### C. As a result of Mr. Macaire's Breaches, Plaintiffs Suffered Significant Damages

When the plaintiff seeks money damages, she must establish that the breach of fiduciary duty was both a but for and proximate cause of her damages. *Soley v. Wasserman*, 823 F. Supp 2d 221, 232 (S.D.N.Y 2011). Some courts in this Circuit have found that breach of fiduciary duty cases "comprise a special breed of cases that often loosen normally stringent requirements of causation and damages." *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994). This is because "an action for breach of fiduciary duty is a prophylactic rule intended to remove all incentive to breach - not simply to compensate for damages in the event of a breach." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 995-96 (2d Cir. 1983) (concluding that "Having found that ABKCO's conduct constituted a breach of fiduciary duty, the district judge was not required to find a "but for" relationship between ABKCO's conduct and lack of success of Harrison Interests' settlement efforts." (*Id.*) Here, plaintiffs suffered damages in the amount of $261,303.98 corresponding to the funds misused by Mr. Macaire in violation to his employment agreement and fiduciary duties. (Exh. 1 to Araujo Decl.)

### III. MS. ARAUJO AND MR. HOLIE DID NOT BREACH ANY AGREEMENT

### A. Jubilee's Board of Directors Had a Statutory Right to Remove and Terminate Mr. Macaire As President and Employee of Jubilee

New York Business Corporation Law provides that "directors shall, except as otherwise required by this chapter or by the by-laws or certificate of incorporation as permitted by this chapter, be elected by a plurality of the votes cast at a meeting of shareholders…" N.Y. Bus. Corp. Law § 614. In turn, directors have a statutory power to elect or appoint officers of a

corporation. N.Y. Bus. Corp. Law § 715(a). Such officers who are "elected or appointed by the board may be removed by the board with or without cause." N.Y. Bus. Corp. Law § 716(a). Further, the vote of a majority of the directors present at the time of the vote, if a quorum is present at such time, shall be an act of the board. N.Y. Bus. Corp. Law § 708(c).

Here, Jubilee's corporate resolutions and certificate of incorporation do not contain any provision regarding the appointment, election or removal of directors and officers. (Ex. 13 to Vandenabeele Decl.) Jubilee's Board of Directors hired Mr. Macaire as the public relations director in charge of business development, and elected him as president of Jubilee in November 2012. (Ex. 14 to Vandenabeele Decl.) Mr. Macaire was without the benefit of a contract limiting Jubilee's Board of Directors' right to discharge him as employee or officer of Jubilee. (*Id*.) The election of Mr. Macaire as officer of Jubilee "shall not" of itself create contract rights. N.Y. Bus. Corp. Law § 716(b). Further, Mr. Macaire was not entitled to any special protection against being terminated and removed by reason of his status of minority shareholder. *Kikis v. McRoberts Corp.*, 225 A.D.2d 455 (1st Dep't 1996).

On December 1, 2016, the Board of Directors that hired and elected Mr. Macaire as Jubilee's employee and officer, properly removed him as Jubilee's president and terminated his employment by a majority vote in accordance with N.Y. Bus. Corp. Law §§ 708 and 716. (DE#62-4.) Contrary to Mr. Macaire's allegation, this majority vote was a proper act of Jubilee's board and not an act of Jubilee's shareholders. Therefore, Ms. Araujo and Mr. Holie, in their capacity as directors of Jubilee did not breach any agreement and did not combine their shares when they removed and terminated Mr. Macaire, even though they had the right to do so. Thereafter, Ms. Araujo and Mr. Holie were duly elected directors of Jubilee in accordance with

17

N.Y. Bus. Corp. Law §702 at the January 3, 2017 shareholders' meeting which Mr. Macaire

chose not to attend. (DE#64-14.)

**B.   The November 7, 2012 Email Is Not a Contract**

The Second Circuit, when examining whether a document constitutes a binding

agreement, noted that "[a] primary concern for courts in such disputes is to avoid trapping parties

in surprise contractual obligations that they never intended." *Arcadian Phosphates, Inc. v.*

*Arcadian Corp.*, 884 F.2d 69 [2d Cir. 1989], quoting *Teachers Ins. & Annuity Asso. v. Tribune*

*Co.*, 670 F. Supp. 491 [S.D.N.Y. 1987] at 497. The judge concluded in *Tribune* that "more is

needed than agreement on each detail [to create a binding obligation. There must be] overall

agreement … to enter into the binding contract." *Id.*; see also *Washington Heights-West Harlem-*

*Inwood Mental Health Council, Inc. v. District 1199, Nat'l. Union of Hosp. & Health Care*

*Employees*, 748 F.2d 105, 107 (2d Cir. 1984) at **9 (intent determines whether document

constituted binding agreement.)

In *Arcadian*, the Second Circuit applied the *Tribune* test when determining whether a

preliminary manifestation of assent was a binding preliminary agreement. *Arcadian*, 884 F.2d 69.

In this case, the court considered whether the intent to be bound was revealed by (1) the language

of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial

performance; and (5) the necessity of putting the agreement in final form. *Id.,* citing *Tribune Co.*,

670 F. Supp. 491 at 499-503. The first factor, the language of agreement, is the most

important. *Id*. Further, "there is a strong presumption against finding obligations in agreements

which include open terms, call for future approvals and expressly anticipate future preparation

and execution of contract documents." *Arcadian,* 884 F.2d 69, quoting *Tribune,* 670 F. Supp.

491 at 499.

Here, the language of the November 7, 2012 Email argues persuasively for letting the presumption stand. Just as in *Arcadian,* in applying the *Tribune* test to the present case, "we need look no further than the first factor." *Arcadian,* 884 F.2d 69. The language of the November 7, 2012 Email - the reference to the possibility that Ms. Araujo and Mr. Holie might disagree and the reference to a final contract to be signed at some future date - shows that neither Ms. Araujo or Mr. Holie intended to be bound. *Id*. In fact, Mr. Holie "did not fully understand it" and "did not agree to the entire email." (DE#62-12 at 37:10, 93:2.) Mr. Holie's response was simply an unenforceable agreement to agree. *Miller v. Tawil,* 165 F. Supp. 2d 487 (S.D.N.Y. 2001.) In any event, Mr. Holie's agreement or non-agreement to that email is irrelevant since Ms. Araujo never responded to it and the subsequent events further demonstrate Ms. Araujo and Mr. Holie's intent not to be bound by the November 7, 2012 Email.

Twenty minutes after sending the November 7, 2012 Email, Mr. Macaire sent another email to Mr. Holie and Ms. Araujo requesting that that they review a draft letter to Mr. Alexander Wolf, Mr. Macaire, Mr. Holie and Ms. Araujo's counsel in charge of drafting corporate documents regarding Jubilee, and added "let me know if it's ok with you and I will send it to him." (DE#64-9.) That draft did not include any prohibition against shareholders' right to combine their shares. (*Id*.) Later on that same day, Mr. Macaire sent that draft letter to Mr. Alexander Wolf which did not include the alleged prohibition against shareholders' right to combine their shares either. (DE#64-10.)

The final and binding Agreements were signed on November 27, 2012 and November 29, 2012. (DE#43-3 and DE#43-4.)  Again, there is no reference whatsoever in these documents to any prohibition against the right of the shareholders to combine their shares. It was Mr. Macaire's responsibility to make sure that both Mr. Holie and Ms. Araujo intended to be bound

by the entire November 7, 2012 Email by including all elements contained in that Email in the final signed Agreements.

C. **Mr. Macaire Is Prohibited by The Parole Evidence Rule from Using the November 7, 2012 Email to Impose Obligations on Ms. Araujo And Mr. Holie Not Mandated by The Agreements**

The parole evidence rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have reduced to an unambiguous integrated writing. Such extrinsic evidence may not be used to modify, explain, vary or supplement the written integrated contract." *Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004), citing *11 Richard A. Lord, Williston on Contracts* § 33:1, at 541 (4th ed. 1999); see also *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172 (2d Cir. 2001) at **15 ("Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and resort to parole evidence is not only unnecessary but improper."); *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.")

Here, Mr. Macaire, in his November 7, 2012 Email, clearly intended that the Agreements, and not the Email constitute the complete and final expression of Mr. Macaire, Ms. Araujo and Mr. Holie's agreement: "if you are OK with all this…. I can draft these changes. Show a proof for you to read before sending it to Alex…. and we can have our contract finished and signed." (DE#62-17.) Furthermore, as already stated above, the subsequent emails Mr. Macaire sent on that same day to Ms. Araujo, Mr. Holie and Mr. Alexander Wolf do not include the alleged prohibition against the shareholders from combining their shares, (DE#64-9; DE#64-10.) Mr. Holie only agreed to agree to sign a final contract and Ms. Araujo did not even respond to the

20

November 7, 2012 Email. *Id*. Therefore, the November 7, 2012 Email is irrelevant because it was just part of the negotiations between Mr. Macaire, Ms. Araujo and Mr. Holie and may not be used to modify, alter, supplement or go beyond, or to impose obligations on the Ms. Araujo and Mr. Holie that are not mandated by the unambiguous terms of the executed integrated Agreements.

In light of the above, Mr. Macaire's first and second counterclaims based on the allegation that Ms. Araujo and Mr. Holie had no right to combine their shares because of the November 7, 2012 Email are meritless and should be dismissed.

## IV.   MS. ARAUJO AND MR. HOLIE DID NOT INTEREFERE WITH ANY CONTRACT

Under New York law, the elements of tortious interference with contract are "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Horowitz v. Nat'l Gas & Elec*., LLC, 2018 U.S. Dist. LEXIS 163285 (S.D.N.Y. 2018), quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006). The Second Circuit has adamantly refused to allow employees "to evade the employment at-will rule and relationship by recasting [a] cause of action in the garb of tortious interference with […] employment." *Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001), quoting *Ingle v. Glamore Motor Sales, Inc.*, 538 N.Y.S.2d 771, 774 (1989). In *Ingle*, the plaintiff, a minority shareholder in a closely held corporation was voted out of his corporate posts and fired from his employment at a special meeting of the corporation's board of directors meeting. 538 N.Y.S.2d 771. The *Ingle* court granted summary judgment in favor of the defendants dismissing the plaintiff's claim for tortious interference holding that the plaintiff was without the benefit of a contract containing a

durational employment protection and without any limitation on the employer's right to discharge. *Id*. New York law is clear that absent "an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Smalley v. Dreyfus Corp.*, 853 N.Y.S.2d 270 (2008), quoting *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232 (1983) (Where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason.) "Thus, either the employer or the employee generally may terminate the at-will employment for any reason, or for no reason. In the decades since *Murphy*, we have repeatedly refused to recognize exceptions to, or pathways around, these principles." *Id*. This clear directive from New York's highest court, reiterating and citing the rule stated in *Ingle*, could not be clearer. On this basis alone, the Court should dismiss Mr. Macaire's claim against Ms. Araujo and Mr. Holie for tortuously interfering with his at-will employment relationship with Jubilee. *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, 2015 U.S. Dist. LEXIS 193133 (S.D.N.Y. 2015).

Despite these consistent and clear holdings from the New York Court of Appeals, however, a number of courts have allowed plaintiffs to state claims of tortious interference with at-will employment relationships under certain "limited situations." *Appel*, 2015 U.S. Dist. LEXIS 193133, citing *Albert,* 239 F.3d 256, 274. In *Appel*, the Court held that

> According to these opinions, the "limited situations" require the plaintiff to "establish that a third party used wrongful means to effect the termination such as fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice." *Id*., quoting *Albert,* 239 F.3d 256, 274.

Here, it is undisputed that the Board of Directors had the authority pursuant to Jubilee's Board of Directors' resolution on November 29, 2012 to employ a public relations director for

Jubilee, and therefore terminate such employee (DE#43-4.) It is further undisputed that Mr.

Macaire was hired at-will by Mr. Holie, as secretary of Jubilee and Ms. Araujo, as treasurer of

Jubilee. (DE#43-3.) Mr. Macaire's employment agreement was in fact signed by Ms. Araujo and

Mr. Mr. Holie on the one hand, and by Mr. Macaire as the employee of Jubilee, on the other. (*Id*.)

Mr. Macaire's employment agreement does not contain a durational employment protection or

any limitation on Jubilee's Board of Director's right to discharge. (*Id*.) On December 1, 2016,

Mr. Macaire was terminated by the very same directors of Jubilee who hired him in 2012.

The existence of a valid contract between the plaintiff and a third-party prong under the

*Horowitz* test (2018 U.S. Dist. LEXIS 163285) fails because Mr. Macaire was hired by the same

parties that allegedly interfered with his employment agreement. In other words, Ms. Araujo and

Mr. Holie hired Mr. Macaire acting in their capacity as directors of Jubilee and Ms. Araujo and

Mr. Holie terminated Mr. Macaire also acting in their capacity as directors of Jubilee. (DE#43-3;

DE#62-4.) Further, Mr. Macaire has not pleaded any breach of the employment agreement and

there is no evidence showing such breach. Conversely, it is Mr. Macaire who breached his

employment agreement by exceeding the $2,000 allowance, as explained above.

In addition, Mr. Macaire has failed to state a claim for tortious interference with his at-

will employment relationship with Jubilee under the more permissive approach explained above

that some courts have followed in the at-will context for such claims. There is no allegations or

evidence showing that Ms. Araujo or Mr. Holie used wrongful means to effect the termination

such as fraud, misrepresentation, malice or threats, and that the means used violated a duty owed

by Mr. Holie and Ms. Araujo to Mr. Macaire. Indeed, Mr. Macaire is unable to show any

volitional conduct on the part of Mr. Holie or Ms. Araujo that could be construed as intending to

23

interfere in any way with Mr. Macaire's relationship with Jubilee. *Appel*, 2015 U.S. Dist. LEXIS 193133 at *81. Therefore, the Court should dismiss Mr. Macaire's Fifth Counterclaim.

## V.     THE COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING MR. MACAIRE'S THIRD AND FOURTH COUNTERCLAIMS

Summary judgment dismissing Mr. Macaire's Third Counterclaim for breach of fiduciary duty, waste of assets, mismanagement, misappropriation and Fourth Counterclaim for breach of fiduciary duty, mismanagement, oppression of a minority shareholder is warranted because these counterclaims lack merit and evidentiary support.

Mr. Macaire essentially alleges that Ms. Araujo and Mr. Holie used Jubilee's funds for their personal benefit. However, all of the funds used by Ms. Araujo and Mr. Holie have always been in compliance with the $2,000 allowance (*Id*. at 303:14.) Mr. Macaire is unable to prove that any of the transactions alleged in his Counterclaims exceed the $2,000 allowance. In fact, between May 2012 and December 2015, Ms. Araujo and Mr. Holie cumulatively spent a total amount of $96,777.20 out of their combined $176,000 total allowance. (Ex. 1 to Araujo Decl.)

Mr. Macaire is also unable to prove his mismanagement allegations. Mr. Macaire alleges that Ms. Araujo and Mr. Holie manipulated Jubilee's general ledgers and other corporate documents for their personal benefit. However, it is undisputed that the expenses were labeled by Dbooks and the books and records of Jubilee including the General Ledgers were all prepared by Cohn Reznick LLP, Jubilee's accounting firm, all independent third parties. (Ex. 3 to Vandenabeele Decl. at 240:7-10) ("dbooks […] would categorize I guess the expenses and I guess then after that it was forwarded to the accountants."); Id. at 240:19-24 ("I did look at some of the expenses and made some corrections […] she was passing them along to dbooks, the bookkeeper, to label.")

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant partial summary judgment on Plaintiffs' First and Second Causes of Action for a declaratory judgment and breach of fiduciary duty respectively, and dismissing all of Defendant's counterclaims, and granting such other and further relief as the Court may deem proper.

Dated: May 15, 2019

Respectfully submitted,

KELLNER HERLIHY GETTY & FRIEDMAN, LLP

By:     Thomas Vandenabeele
          Michelle Martin
*Attorneys for Plaintiffs*
470 Park Avenue South—Seventh Floor
New York, New York 10016-6819
Telephone: (212) 889-2821
Email: tv@khgflaw.com
       mm@khgflaw.com