UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILDA ARAUJO, LUC HOLIE, JUBILEE FIRST
AVENUE CORPORATION,

<div style="margin-left:2em">Plaintiffs,</div>

<div style="text-align:center">v.</div>

ERIC MACAIRE,

<div style="margin-left:2em">Defendant.</div>

ECF Case

16 Civ. 9934 (PAE) (KNF)

---

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Michael J. Driscoll, Esq.
MALAPERO, PRISCO & KLAUBER LLP
Attorneys for Defendants
271 Madison Avenue, 17th Floor
New York, N.Y. 10016
(212) 661-7300
mdriscoll@malaperoprisco.com

*Counsel for Defendant Eric Macaire, and
on behalf of Jubilee First Avenue Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT........................................................................1

JURISDICTION.................................................................................................1

STATEMENT OF FACTS.................................................................................3

ARGUMENT......................................................................................................3

I.     PLAINTIFF ARAUJO AND JUBILEE CORP. VOLUNTARILY
     SETTLED THE FRANCO ACTION AND HAVE NO STANDING TO
     SEEK CONTRIBUTION IN LAW OR EQUITY......................................4

        a)  Plaintiffs' Araujo and Holie have no Standing to challenge the
            Franco Settlement as their Complaint Only Asks for Relief in
            Equity for Julilee Corp. ...................................................5

        b)  Plaintiff Jubilee Corp.'s Payment of Settlement Amount was
            Voluntary and as such has no Right to Contribution from
            Defendant.......................................................................6

II.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CAUSE OF ACTION
     MUST BE DISMISSED BY LAW..........................................................6

        a)  Plaintiffs are Statutorily Barred from Asserting a
            Breach of Fiduciary Duty Claim before December 23, 2013...............8

        b)  Plaintiffs Claims for Reimbursement of Expenditures are
            Deemed Waived and as such Plaintiffs are Barred from Asserting
            a Breach of Fiduciary Duty Claim before December 23, 2013.............9

        d)  Accounting necessary to determine if excess and
            offsets/benefits to Corp. ...................................................10

III.    **THERE ARE ISSUES OF FACT AS TO WHETHER THERE WAS CONTRACT BY AND BETWEEN THE PARTIES**............................**11**

     a)   Law of the Case ..................................................…........................**11**

     b)   The Parol Evidence Rule Does Not Bar the Admission of Evidence of Prior Agreements when the Contract is Not Completely Integrated ...............................…........................**12**

     c)   Defendants Counter Claim for Breach of Contract Should Not be Denied ...........................................................................…...........**16**

**CONCLUSION**...............................................................................**16**

# TABLE OF AUTHORITIES

*Abrams v. Donati*, 66 N.Y.2d 951, (1985)……………………………………………………..……7

*Am. Credit Servs., Inc. v. Jay Robinson Chrysler/Plymouth*, 206 A.D.2d 918, 615 N.Y.S.2d 175 (4th Dep't 1994) ………………………………………….……....................................3

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*…3

*Argent Elec., Inc. v. Cooper Lighting, Inc.*, 2005 U.S. Dist. LEXIS 18689, *12-13, 2005 WL 2105591 (S.D.N.Y. 2005) ………………………………………………….……......................13

*AXA Global Risks U.S. Ins. Co. v. Sweet Assoc.*, 302 A.D.2d 844, 846, 755 N.Y.S.2d 759 (3d Dep't 2003) ……………………………………….………….................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)…………..4

*Clark v. Clark*, 117 A.D.3d 668, 669, 985 N.Y.S.2d 276 (2d Dep't 2014) ……………………..11

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920 (1989) ………………………………….………….................................................13

*Dale v Gentry*, 66 A.D.3d 1469, 885 N.Y.S.2d 832 (4th Dept 2009)…………………………… 4

*Diversified Group, Inc. v Marcum & Kliegman LLP*, 129 A.D.3d 552, 12 N.Y.S.3d 39 (1st Dep't 2015) ……………………………….…………….................................................5

*Erickson v. Cross Ready Mix, Inc.*, 98 A.D.3d 717, 717, 950 N.Y.S.2d 175 (2d Dep't 2012) ....11

*Glenn v. Hoteltron Sys.*, 74 N.Y.2d 386, 392, 547 N.Y.S.2d 816 (1989) ……………………….7

*Elenson v. Wax*, 215 A.D.2d 429, 626 N.Y.S.2d 531 (2d Dep't 1995) ……………………….7

*Kaufman v. Cohen*, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157 (1st Dep't 2003) …………………9

*Matter of Kaszirer v Kaszirer*, 286 A.D.2d 598, 599, 730 N.Y.S.2d 87 (1st Dep't 2001) …………9

*Makeun v. New York*, 98 A.D.2d 583, 585-586, 471 N.Y.S.2d 293, 298 (2d Dep't 1984) …………4

*Gonzales v. Armac Indus.*, 81 NY 2d 1, 595 N.Y.S.2d 360 (1993) ……………………………5

*Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000) ………………………………4

*Martin v. City of Cohoes*, 37 N.Y.2d 162, 165, 371 N.Y.S.2d 687 (1975) ……………………12

*Martin Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109-10, 436 N.Y.S.2d 247 (1981) ....13

*Messenger v. Anderson*, 225 U.S. 436, 444 (1912) ..................................................11

*Mitchell v. New York Hospital*, 61 N.Y.2d 208, 216, 473 N.Y.S.2d 148, 152 (1984) .................5

*Morgulas v. J. Yudell Realty, Inc.*, 161 A.D.2d 211, 213, 554 N.Y.S.2d 597 (1st Dep't 1990) ...6

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) ....................4

*Orsini v. Kugel*, 9 F3d 1042, 1077 (2d Cir. 1993)........................................................ 5

*Paradiso & DiMenna v. DiMenna*, 232 A.D.2d 257, 258, 649 N.Y.S.2d 126 (1st Dep't 1996) ......8

*Perlmutter v. Timely Toys, Inc.*, 8 A.D.2d 834, 190 N.Y.S. 107, 109 (2d Dep't 1959) ...............5

*Rosenfeld v. Zerneck*, 4 Misc. 3d 193, 195-196, 776 N.Y.S.2d 458 (Sup Ct, Kings Cty 2004)..14

*Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 709-710, 592 N.E.2d 1289 (1992) ........13

*Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ...................4

*Shattuck v. Klotzbach*, 2001 WL 1839720, *2, 2001 Mass Super LEXIS 642, *6, 14 Mass L Rptr 360 (MA Superior Ct. 2001) ......................................................................................14

*Spitzer v. Schussel*, 7 Misc 3d 171, 174, 792 N.Y.S.2d 798 (Sup 2005) ...................................6

*St. John's Holdings, LLC v. Two Elecs, LLC*, 24 LCR 654, 658 (2016), *aff'd*, 92 Mass. App. Ct. 1114, No. 16-P-1701 (Nov. 15, 2017) ..........................................................................14

*Tatko v. Sheldon Slate Products Company, Inc.*, 2 A.D.3d 1030, 1031, 769 N.Y.S.2d 626 (3d Dep't 2003) ..........................................................................................................................8, 9

*Vanacore v. Vanco Sales LLC*, 2017 U.S. Dist. LEXIS 99353, 2017 WL 2790549 (S.D.N.Y. 2017) ...........................................................................................................................12

*Walentas v. 35-45 Front St. Co.*, 20 A.D.3d 473, 474, 797 N.Y.S.2d 908 (2d Dep't 2005) ........13

*Wolf v. Rand*, 258 A.D.2d 401, 403, 685 N.Y.S.2d 708 (1st Dept. 1999) .....................................7

## **STATUTES**

General Obligations Law 15-108...........................………….………………..…........1, 5

General Obligations Law § 5-701(a) ………………………………………….…….13

New York Statute of Frauds §§ 5-701(b)(3)(c) and (d) …………………………….…….14

Fed. R. Civ. P. 56(c) .............................………….………………...............4

Defendant ERIC MACAIRE ("Macaire") individually, and on behalf of JUBILEE FIRST AVENUE CORPORATION ("Jubilee Corp.") (collectively, "Defendants") respectfully submits this Memorandum of Law in opposition to the motion for partial summary judgment of ILDA ARAUJO ("Araujo") and LUC HOLIE ("Holie"), and Jubilee Corp. (collectively "Plaintiffs"). All applicable exhibits are attached to the Declaration of Michael Driscoll ("MD Dec").

## JURISDICTION

The action is venued in Federal Court due to diversity, as Macaire was and is a resident of Connecticut and Plaintiffs' were and are New York residents.  There is no federal question presented, and the *Erie* Doctrine applies.

## PRELIMINARY STATEMENT

Plaintiffs' partial motion for summary judgment asks the Court to grant summary judgment as to their First and Second Cause of Action, and to dismiss all of Macaire individual cross-claims, and those on behalf of Jubilee Corp.  :

As to Plaintiffs' First Cause of Action, Plaintiffs' Araujo and Holie ask for a Declaratory Judgement to be made as to Macaire's fair and equitable share of the settlement in the Franco Action ("Franco Settlement").  However, none of the Plaintiffs, including Jubilee Corp., have legal or equitable standing to seek contribution or equitable costs from Macaire.  General Obligations Law 15-108 and the supporting case law, hold that any party that settles an action prior to a fact finder determination on liability may not seek contribution or indemnification. Moreover, if a settling party pays more than their/its fair share, that settling party is deemed to have volunteered the excess.  The Court should deny Plaintiffs' request for summary judgment their First Cause of Action.

As to Plaintiffs Second Cause of Action for breach of duty against Macaire, Plaintiffs' Araujo and Holie have no legal standing to bring a derivative suit individually. Second, Araujo and Holie have never asked for any money back to make Jubilee Corp. whole, they have always compared Macaire's amount of dividends/expenses to their own. This is a direct suit hidden in a derivative suit. Because of this, Plaintiffs have a statute of limitations is only three years from the date of suit. As such, Plaintiffs' are barred from seeking any money from Macaire prior to December 23, 2013, as this suit was started on December 23, 2016 (MD. Dec. Exhibit AAA). Even if this Court finds that the more extensive six-year statute of limitations applies for all claims prior to December 23, 2013, Macaire had a valid business reason for each expense he took, and he never mislead, lied, created a corporation to "siphon off funds," or act in a way that would harm the corporation (MD Dec. Exhibit A, ¶¶. Moreover, Araujo, as the treasurer, reviewed all expenses from the start of the company, and she took frequent trade-off's to allegedly compensate for Macaire's alleged malfeasance (MD Dec. UU, KKK, CC, E, p. 68, and F, pp. 275-278.). In addition, the attached Yearly Expense Chart (Plaintiff's Exhibit 1) is incomplete, inaccurate, and cannot be used as a valid measure of Macaire's, Holie's, or Araujo's distributions and expenses (MD Dec. Exhibit B, ¶¶ 33-41), Exhibits III and KKK). The Court should deny Plaintiffs' request for summary judgment as to their Second Cause of Action.

As to Plaintiffs' Third Cause of Action asking the Court to strike all of Defendants' counterclaims, there are legal and factual issues of fact as to whether there was a contract made on November 6, 2012 or November 7, 2012 (MD Dec. Exhibits C and D). There is was either an oral contract made on November 6, 2012 that was memorialized in the November 7, 2012 email confirming terms; or there was a valid and binding contract made on November 7, 2012, when Holie consented to the deal as a whole or in part. At the very least, Holie entered into a

2

shareholder voting agreement (that is not subject to the statue of frauds) with Macaire on November 7, 2012, and his breach of that agreement on December 1, 2016 (MD Dec. Exhibit II) is compensable.  Should the Court find no contract exists in any form legally, Defendants are entitled to conform their pleadings and continue in equity by law.  Under any circumstance outlined above, there are issues of fact and law for jury determination.

Finally, the actions of Araujo and Holie to install windows and weatherproofing on their house, that admittedly had no corporate purpose (MD Dec. Exhibit F, p. 275-278; and Exhibit G, p. 66:9-21) is only one of several de facto breaches of fiduciary duty to Jubilee Corp.   A full audit must be conducted to determine how much other money Araujo and Holie took from Jubilee Corp.   That part of the motion seeking to dismiss the counter-claims of Defendants should be denied.

## STATEMENT OF FACTS

Macaire respectfully refers the Court to the accompanying Declaration of Michel Driscoll ("MD Dec.") along with its attached Exhibits A-KKK, the Declaration of Eric Macaire, attached to the MD Dec. as Exhibit A, and the Declaration of Justin McAuliffe, attached to the MD Dec. for a full recitation of the relevant facts of this action.  All capitalized terms and shortened names herein have the same meaning subscribed to them in the MD Dec.

## ARGUMENT

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists,

the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

Plaintiffs' motion for summary judgment should be summarily dismissed for failure to include the Complaint in their moving papers.   Pleadings are required to be attached to the moving papers on a motion for summary judgment. *Dale v Gentry*, 66 A.D.3d 1469, 885 N.Y.S.2d 832 (4th Dept 2009).

## POINT I

### PLAINTIFF ARAUJO AND JUBILEE CORP. VOLUNTARILY SETTLED THE FRANCO ACTION AND HAVE NO STANDING TO SEEK CONTRIBUTION IN LAW OR EQUITY

It is undisputed that the settlement of the Franco action was entered into on the consent of all parties and prior to any judgment or adjudication on liability or damages in that action.  It is

also undisputed that Jubilee Corp. paid the full amount due under the settlement agreement in the Franco action.  Jubilee Corp.'s  of the full settlement amount was voluntary.

> a) Jubilee Corp.'s Payment of Settlement Amount was Voluntary and It has no Right to Contribution from Defendant

The Courts have held that any payment or settlement made prior to a judgment is a voluntary payment and no contribution or equitable share may be sought.  *Makeun v. New York*, 98 A.D.2d 583, 585-586, 471 N.Y.S.2d 293, 298 (2d Dep't 1984).  Moreover, "[a] tortfeasor who settles with a claimant by paying more than what turns out to have been his equitable share is deemed a volunteer as to the excess…" and may not seek contribution as to the excess paid. *Orsini v. Kugel*, 9 F3d 1042, 1077 (2d Cir. 1993). *Gonzales v. Armac Indus.*, 81 NY 2d 1, 595 N.Y.S.2d 360 (1993); *see also*, *Perlmutter v. Timely Toys, Inc.*, 8 A.D.2d 834, 190 N.Y.S. 107, 109 (2d Dep't 1959)("No person can make himself a creditor of another by voluntarily discharging a duty which belongs to that other to perform, and no debt can be implied in law from a voluntary payment of a debt of another").

New York courts have explained that N. Y. Gen. Oblig. Law section 15-108(c)'s waiver of contribution rights derives from the principle that "money voluntarily paid by one person may not be recovered back." *Mitchell v. New York Hospital*, 61 N.Y.2d 208, 216, 473 N.Y.S.2d 148, 152 (1984).

The Court in *Diversified Group, Inc. v Marcum & Kliegman LLP*, 129 A.D.3d 552, 12 N.Y.S.3d 39 (1st Dep't 2015) held that the Legislative intent of not allowing a volunteer to recover an excess paid by him leads the Court to conclude that the concept of "liability" in N. Y. Gen. Oblig. Law section 15-108 must include a determination of culpability and damages. *Id*. at 591.

Notably, Magistrate Sarah Netburn ruled only that Macaire "can be held liable" as an "Employer" for purposes of trial. (MD Dec. Exhibit K at page 11)  Thus, there was no final determination of liability or damages in the Franco action.  As the Franco settlement agreement was entered into prior to judgment or adjudication, it is respectfully submitted that any payments made by Jubilee Corp. were therefore voluntary and plaintiffs' claims for contribution are unrecoverable.

> b)   Araujo and Holie have no Standing to Challenge the Franco Settlement as their Complaint Only Asks for Relief in Equity <u>for Jubilee Corp.</u>

Araujo and Holie seek money damages to reimburse Jubilee Corp. for monies paid in satisfaction of the Franco Settlement.  Plaintiffs' Araujo and Holie do not seek any compensation on behalf of themselves individually.  As such, Plaintiffs' Araujo and Holie have no legal standing to challenge the Franco Settlement, as they have only asked for relief in equity on behalf of the corporation—not themselves as individuals.

Courts have held that where the money damages sought are meant only to make the organization whole, these damages are "akin to an equitable remedy".  *See*, *Spitzer v. Schussel*, 7 Misc 3d 171, 174, 792 N.Y.S.2d 798 (Sup Ct 2005).

## POINT II

### PLAINTIFFS' BREACH OF FIDUCIARY DUTY <br> <u>CAUSE OF ACTION MUST BE DISMISSED BY LAW</u>

Araujo and Holie have no standing to bring a derivative suit, and they have not alleged a direct action.  MD Dec. Exhibit AAA.  "Individual principals of a corporation are legally distinguishable from the corporation itself."  *Morgulas v. J. Yudell Realty, Inc.*, 161 A.D.2d 211, 213, 554 N.Y.S.2d 597 (1st Dep't 1990). A shareholder does not have standing to sue as an

individual when the cause of action in the complaint is derivative in nature and shows no unique harm to the moving shareholder. *See*, *Abrams v. Donati*, 66 N.Y.2d 951, 498 N.Y.S.2d 782 (1985).

Generally, "allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." *Id*. at 953 (citations omitted).

A complaint in which the allegations confuse a shareholder's derivative and individual rights will therefore be dismissed." *Id*. (citations omitted).  This rule typically applies with equal force to shareholders of closely held corporations, *see e.g.*, *Glenn v. Hoteltron Sys.*, 74 N.Y.2d 386, 392, 547 N.Y.S.2d 816 (1989) (the diversion of Ketek's corporate assets by Schachter, an officer of that corporation, for his own profit resulted in a corporate injury because it deprived Ketek of those profits.  Kulik, the innocent shareholder, was injured only to the extent that he was entitled to share in those profits.  His injury was real, but it was derivative, not direct and the profits should be returned to Ketek Corp.); *Wolf v. Rand*, 258 A.D.2d 401, 403, 685 N.Y.S.2d 708 (1st Dept. 1999)(Court held that a shareholder in a closely held corporation who commenced an action for breach of fiduciary duty against operators of the corporation, seeking recovery of corporate assets and profits allegedly wrongfully diverted had standing only to sue derivatively as a shareholder and not in her individual capacity for recovery of the assets and profits).

"It is axiomatic that a shareholder has no individual cause of action to recover damages for a wrong against a corporation, even if that shareholder loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation." *Elenson v. Wax*, 215 A.D.2d 429, 626 N.Y.S.2d 531 (2d Dep't 1995)

Even where the corporation is a closely held, small, sub-chapter S corporation, and the defendants may share in the award of damages, the claims to recover for the conversion of corporate

assets belong to the corporation not the individual, and any damages awarded by the Court will be to the corporation rather than directly to the derivative plaintiff.  *See*, *Paradiso & DiMenna v. DiMenna*, 232 A.D.2d 257, 258, 649 N.Y.S.2d 126 (1st Dep't 1996).

Here, a review of Plaintiffs' Complaint shows that all alleged wrongs committed by Macaire involved mismanagement/theft/etc. of corporate assets—not wrongs that harmed plaintiffs Araujo and Holie in an individual shareholder capacity.  (MD Dec. Exhibit AAA)  It is clear that plaintiffs' cause of action for breach of fiduciary duty is derivative in nature on behalf of the corporation Jubilee Corp.  Thus, Araujo and Holie have no individual standing to bring the breach of fiduciary duty cause of action or the conversion cause of action against Macaire because those claims are derivative in nature.

Also, because Plaintiffs' never articulate what the company should be given back in compensation, Jubilee's motion for summary judgment on this point lacks clarity, and issues of fact remain.

        a)     Plaintiffs are Statutorily Barred from Asserting a
                 Breach of Fiduciary Duty Claim before December 23, 2013

Plaintiffs initiated this suit on December 23, 2016.  (MD Dec. AAA).  Pursuant to C.P.L.R. §214(4), the claim for breach of fiduciary duty against a shareholder in a shareholder dispute is three years from the date the case is first brought when only money damages are sought.

Plaintiffs' cause of action for breach of fiduciary duty alleging misappropriating corporate funds for personal gain are limited to a three year statute of limitations pursuant to CPLR §214. *See*, *Tatko v. Sheldon Slate Products Company, Inc*., 2 A.D.3d 1030, 1031, 769 N.Y.S.2d 626 (3d Dep't 2003).

> To the extent that plaintiff alleges a more general breach of fiduciary duty, such claims would fall under either a three-year or six-year limitations

period, depending on the nature of relief sought (citations omitted). <u>Because plaintiff's claim effectively seeks only money damages through recoupment of past bonuses,</u> <u>the applicable limitations period is three years,</u> precluding plaintiff's challenges to corporate expenditures made prior to November 14, 1997. *Id.* (*emphasis added*)

In a breach of fiduciary duty action that did not allege fraud or breach of trust agreement, the standard is a three-year statute of limitations. *See, Kaufman v. Cohen*, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157 (1st Dep't 2003); *see also*, *Matter of Kaszirer v Kaszirer*, 286 A.D.2d 598, 599, 730 N.Y.S.2d 87 (1st Dep't 2001)(Plaintiff trust beneficiary's cause of action alleges that defendant former trustee knew or should have known of his co-trustee's alleged conversion of trust assets and was negligent in not apprising plaintiffs thereof, and does not allege fraud or breach of any particular provision of the trust agreement. Thus, the cause of action based on negligence is subject to a three-year and not a six-year limitations period).

As Plaintiffs never sought reimbursement or recoupment of these past expenditures until filing their complaint on December 23, 2016, these claims are beyond the three-year statute of limitations and are untimely.

      c)    Plaintiffs Claims for Reimbursement of Expenditures are
                  Deemed Waived and as such Plaintiffs are Barred from Asserting a
                  <u>Breach of Fiduciary Duty Claim before December 23, 2013</u>

Plaintiffs have also waived their right to seek claims beyond three years, even if the Court should find the six-year statute is applicable. In *Tatko v. Sheldon Slate Products Company, Inc.*, *supra*, the Appellate Court found that the Supreme Court was correct in finding that the record was "replete with evidence" of waiver and acceptance of the alleged offending party's actions because of non-action and repeated approval by the Board. *Id.* at 1031.

The failure of a shareholder or board member to take action on known or suspected corporate expenditures of another member establishes a failure to act that evinces an intent not to

claim those rights. *See e.g. AXA Global Risks U.S. Ins. Co. v. Sweet Assoc.*, 302 A.D.2d 844, 846, 755 N.Y.S.2d 759 (3d Dep't 2003).

In the case at bar, as stated above, the November 7, 2012 email set forth all expenditures made to or by Macaire prior to that date. (*See*, MD Dec Exhibit C). Araujo and Holie knew and approved all those expenditures for the next three years until their first protestation in May 2015. Such knowledge and approval evidences their acceptance of the expenditures and Macaire's custom and practice related to his expenses.

Since Araujo and Holie had knowledge of the prior expenditures, approved those transactions and never sought reimbursement or pressed their legal rights during that time-period, they effectively waived their right to claim reimbursement or recoupment of those expenditures and acceptance of Macaire's alleged "conduct". It is respectfully submitted that these claims are therefore barred from being asserted at this late juncture.

 d) <u>Plaintiffs' Yearly Expense Chart is Inaccurate and Incomplete</u>

Plaintiffs' attempt to state that Macaire has committed a breach of his fiduciary duty because he has violated their employment agreement by taking more than his allotted $2,000 per month. (MD Dec. Exhibit Y). This claim is false and cannot be determined from Plaintiffs' moving papers. However, Plaintiffs' Yearly Expense Chart (the "Chart") (Plaintiffs' Exhibit 1) inflates Macaire's numbers, fails to account for his valid expenses, and does not include expenses or dividends of Araujo and Holie. MD Dec. Exhibit A, at ¶¶71-80 and B, at ¶¶33-41.

The chart fails to identify cash taken (MD Dec. Exhibit F, p. 266, loans that were paid back by Macaire (MD Dec. Exhibit III), part of the windows for their home that were not in the chart (MD Dec. Exhibit KKK, a $50,000 loan/dividend awarded to Araujo and Holie (MD Dec. Exhibit

MM, p. 9), (MD Dec. Exhibits A, and more. Clearly Plaintiffs did not account for side trips while traveling to Luc's parent's house while on vacation in France (MD Dec. Exhibit G, pp. 82-83

The entire Chart and the numbers they are based on do not show the entire story of Araujo's, Holie's, and Macaire's spending. The Chart and Plaintiffs' alleged numbers are not enough to establish a prima facie case for Macaire's alleged taking of more than Araujo and Holie.

Further, the claims that Macaire used Doodle LLC to syphon off money from Jubilee are preposterous. Macaire stored restaurant equipment and other items at the Doodle LLC storage building and Holie, McAuliffe, and Araujo knew it. Moreover, in 2015, Luc and Ilda reimbursed themselves for the alleged bad acts of Macaire by taking $50,000 dollars for themselves, and then re-classifying it as a loan to likely avoid taxes. Thus, Luc and Ilda simply made themselves whole and did not think about the health of the corporation.

A full forensic accounting is needed to resolve all factual issues about spending. Plaintiffs' request for summary judgment on their second cause of action must be denied.

## POINT III

### THERE ARE ISSUES OF FACT AS TO WHETHER THERE WAS CONTRACT BY AND BETWEEN THE PARTIES

a)    Law of the Case

It is axiomatic that the Doctrine of The Law of the Case is a judicially crafted policy designed to limit the relitigation of issues where the parties had a "full and fair" opportunity to litigate the initial determination. *See*, *Erickson v. Cross Ready Mix, Inc.*, 98 A.D.3d 717, 717, 950 N.Y.S.2d 175 (2d Dep't 2012); *see also*, *Messenger v. Anderson*, 225 U.S. 436, 444 (1912); *Clark v. Clark*, 117 A.D.3d 668, 669, 985 N.Y.S.2d 276 (2d Dep't 2014)("The doctrine of the law of the case is a rule of practice, an articulation of sound policy that, when an issue is once

judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned" (internal quotation marks omitted), *quoting Martin v. City of Cohoes*, 37 N.Y.2d 162, 165, 371 N.Y.S.2d 687 (1975).

In this Court's Memorandum and Order, filed on January 8, 2018, Judge Kevin N. Fox, ruled that Defendants could amend their answer and assert counterclaims. (MD Dec. Exhibit YY). Within that decision, which is based on the same exhibits attached to the Declaration of Michael Driscoll and facts as they were then, that:

> "[t]he Court finds that the defendant alleged sufficient factual content that, if accepted as true, states a breach of contract cause of action that is plausible on its face."

It is clear that the decision of Judge Fox declares the facts alleged by Macaire support a claim for breach of contract. Factually nothing has changed since the Court's findings in January 2018. The deposition testimony and further discovery documents produced since then have only further created issues of fact for a jury. Thus, it is respectfully submitted that Judge Fox' decision and findings that material facts exist which substantiate a viable Breach of Contract Claim is the "Law of the Case". As such plaintiffs cannot maintain a motion for summary judgment where factual issues exist and must be addressed by a jury.

b)   The November 7, 2012 Email Constitutes a
     Valid Written Operating Agreement between the Parties

The New York statute of frauds provides that certain agreements are "void, unless [they] or some note or memorandum thereof be in writing" and signed by the party to be charged. N.Y. Gen. Oblig. Law § 5-701(a). See, *Vanacore v. Vanco Sales LLC*, 2017 U.S. Dist. LEXIS 99353, 2017 WL 2790549 (S.D.N.Y. 2017)

G.O.L. § 5-701(a)(1) generally bars enforcement of contracts that cannot be performed within one year.  *See*, *Am. Credit Servs., Inc. v. Jay Robinson Chrysler/Plymouth*, 206 A.D.2d 918, 615 N.Y.S.2d 175 (4th Dep't 1994)  Contracts that cannot be performed within one year are enforceable only if they are supported by a writing that includes the agreement's essential terms and is signed by the party against whom enforcement is sought.  Whether a writing satisfies the Statute of Frauds is a question of law.  *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 709-710, 592 N.E.2d 1289 (1992).

"To satisfy the Statute of Frauds, [a writing] must completely evidence the contract which the parties made." "If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920 (1989); *see also*, *Walentas v. 35-45 Front St. Co.*, 20 A.D.3d 473, 474, 797 N.Y.S.2d 908 (2d Dep't 2005)("To satisfy the statute of frauds, a memorandum evidencing a contract and subscribed by the party to be charged must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement.")

Before rejecting an agreement as indefinite, "a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear." *Id.* at 483; *see also*, *Martin Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109-10, 436 N.Y.S.2d 247 (1981)(explaining that an agreement does not fail for definiteness "if a methodology for determining the [missing term] was to be found within the four corners of the [agreement] . . . [or the agreement] invited recourse to an objective extrinsic event, condition or standard on which the [missing term] was made to depend"). *Argent Elec., Inc. v. Cooper Lighting, Inc.*, 2005 U.S. Dist. LEXIS 18689, *12-13, 2005 WL 2105591 (S.D.N.Y. 2005). *See*

*also*, *Shattuck v. Klotzbach*, 2001 WL 1839720, *2, 2001 Mass Super LEXIS 642, *6, 14 Mass L Rptr 360 (MA Superior Ct. 2001)(the Massachusetts Superior Court denied defendant's motion to dismiss a claim to enforce a contract for the sale of property where the e-mail correspondences "[t]aken as a whole [could lead] a reasonable trier of fact [to] conclude that the e-mails sent by the defendant·were 'signed' with the intent to authenticate the information contained therein as his act").

Sections 5-701(b)(3)(c) and (d) of the New York Statute of Frauds provide that:

(b)(3) There is sufficient evidence that a contract has been made if: . . .

(c) The party against whom enforcement is sought admits in its pleading, testimony or otherwise in court that a contract was made; or

(d) There is a note, memorandum, or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker.

Evidence of an electronic communication indicating the making therein of a contract or a confirmation, admission, note, memorandum or writing is not insufficient because it omits or incorrectly states one or more material terms agreed upon, so long as such evidence provides a reasonable basis for concluding that a contract was made. *Id.* at *16.

Courts have held that a signed electronic communication can constitute a writing that satisfies the Statute of Frauds. *St. John's Holdings, LLC v. Two Elecs, LLC*, 24 LCR 654, 658 (2016), *aff'd*, 92 Mass. App. Ct. 1114, No. 16-P-1701 (Nov. 15, 2017). "[T]he sender's act of typing his name at the bottom of the e-mail manifested his intention to authenticate this transmission for statute of frauds purposes and the copy of the e-mail in question submitted as evidence by the defendant constitutes a sufficient demonstration of same." *Rosenfeld v. Zerneck*, 4 Misc. 3d 193, 195-196, 776 N.Y.S.2d 458 (Sup Ct, Kings County 2004).

14

Here, Macaire either made a contract with Holie on November 6, 2012 in the meeting they all had to clarify expenses or he made a contract with Holie to form a voting block on November 7, 2012 (MD Dec. Exhibit B and C). The case law cited above shows the modern trend to allow electronic communications to serves as a contract when there are no terms left open and the other side consents. The evidence of the November 7, 2012 email is proof that the sides understood the deal. Holie, under the apparent authority of he and Araujo, agreed. Macaire then changed his shares accordingly. At the very least he detrimentally relied. If the Court finds no contract, Defendants' should be allowed to conform their pleadings.

It is Macaire's position that the oral agreement with Holie and Araujo during that November 6, 2012 meeting was a binding oral contract. The next day Macaire memorialized the terms of that agreement and Holie's email back that "we" agree with your proposal formed an operating agreement. (*Id.*) This formed an actual contract and/or an operating agreement, or it cemented the details of the November 6, 2012 agreement.

In the alternative, Holie and Macaire entered into a voting block agreement on November 7, 2012, and Holie violated same on December 1, 2012. By voting with his Araujo to fire Macaire and remove him. A voting block can be executed within one year and is not within the statue of frauds. Further, Macaire would not have reduced his shares if he did not have assurances. In this case we have more than an oral agreement, we have a writing. Thereafter for years Macaire references this email in emails and texts with Holie and Araujo. It is also brought up in the July 2016 meeting with Justin McAuliffe (MD Dec. Exhibits HH and B). Until this lawsuit, Araujo and Holie never denied the contract, even when confronted with it multiple times.

15

Lastly, Plaintiffs' correctly argue that the Board of Directors, can fire an at-will-employee for any cause or remove him as President in their capacity as Directors. The problem with this is that Holie (at least) and Araujo (at most) were barred from combining their shares. This means they had no power to file or remove Macaire. When they did do both, they enticed Jubilee Corp. to fire someone that Aruajo and Holie had no power to file. This inducement is a breach and outside the business judgment rule. Holie and Araujo may be personally liable for this decision. At the very least there is an issue of fact as to whether they had the power to fire Macaire.

At the very least there are questions about what was formed on November 7, 2012, and Macaire detrimentally relied upon the promise of the pronoun "we," and all the things that transpired because of that one word.

c)   Defendants Counter Claim for Breach of Contract Should Not be Denied

Araujo and Holie used corporate money to install windows and weatherproofing on their house without a corporate purpose. (MD Dec. Exhibit F, p. 275-278; and Exhibit G, p. 66:9-21) This is one incidence of their breach of duty, and a full accounting will show more. A full audit must be conducted to determine how much other money Araujo and Holie took from Jubilee Corp. That part of the motion seeking to dismiss the counter-claims of Defendants should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for summary judgment in its entirety; and for such other and different relief.

Dated: New York, New York
June 6, 2019

Respectfully submitted,

By: _____

MALAPERO PRISCO & KLAUBER LLP
Michael J. Driscoll (MD5484)
Carolyn A. Campbell
271 Madison Avenue, 17th Floor
New York, New York 10016
(212) 661-7300
mdriscoll@malaperoprisco.com

*Counsel for Eric Macaire and on behalf of Jubilee First Avenue Corporation*

17