USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/29/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILDA ARAUJO, LUC HOLIE and JUBILEE FIRST AVENUE CORPORATION,

Plaintiffs,

v.

ERIC MACAIRE,

Defendant.

ERIC MACAIRE, as an individual shareholder of JUBILEE FIRST AVENUE CORPORATION, and ERIC MACAIRE, on behalf of JUBILEE FIRST AVENUE CORPORATION,

Plaintiffs,

v.

ILDA ARAUJO and LUC HOLIE,

Defendants.

**REPORT AND RECOMMENDATION**

16-CV-9934 (PAE) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Ilda Araujo ("Araujo"), Luc Holie ("Holie") and Jubilee First Avenue Corporation ("Jubilee") commenced this action against Eric Macaire ("Macaire"), invoking diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332(a), and seeking through Count I a "Declaratory Judgment," through Count II damages for "Breach of Fiduciary Duty," through Count III damages for "Conversion" and through Count IV a "Permanent Injunction." The plaintiffs assert that Araujo, Holie and Macaire each owns one third of Jubilee's shares. They

allege that, between 2012 and 2015, Macaire "used his position as president of the company to improperly use over $250,000 of corporate money for his exclusive benefits and to the detriment of the corporation." On November 16, 2016, a settlement agreement was approved in an action filed in this district by Jubilee's employees against Jubilee, Araujo and Macaire, for violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), styled Franco v. Jubilee First Avenue Corp., 14-CV-7729. The plaintiffs assert that the settlement of the Franco action ("Franco Settlement") "does not address the issue of the apportionment of the obligations of Ilda Araujo, Jubilee First Avenue Corporation, and Eric Macaire to pay the Settlement Sum." According to the plaintiffs, Macaire's equitable "pro-rata share of liability . . . is . . . at least 75%," but Macaire "refused to pay any amount and has taken the position that plaintiff Jubilee First Avenue Corporation alone should pay for 100% of the Settlement Sum." According to the plaintiff, on December 1, 2016, at a meeting of Jubilee's board of directors, Macaire was terminated as an employee and removed as Jubilee's officer. The plaintiffs seek

> a judgment a) declaring that Eric Macaire's equitable share of the Settlement Sum to be paid is no less than 75% of the Settlement Sum, while Ilda Araujo is only responsible for the balance of that sum; b) directing the parties to pay such amount in compliance with the terms of the Settlement; c) awarding no less than $250,000, together with prejudgment interest, costs, disbursements, and reasonable attorneys' fees incurred in this action on the 2nd cause of action; d) awarding compensatory damages to be determined at trial on the third cause of action, punitive damages, reasonable attorneys' fees and the costs of this action; and injunctive relief on the fourth cause of action; and such other, further, and different relief as the Court may deem just and proper.

Macaire answered, denying the allegations against him and asserted the following counterclaims: (i) breach of contract; (ii) "breach of fiduciary duty/waste of assets/ mismanagement/misappropriation as a derivative action on behalf of Jubilee First Avenue corporation" (iii) "breach of fiduciary duty/mismanagement/oppression of a minority shareholder

a direct action by Macaire"; and (iv) tortious interference with contract. In addition, Macaire seeks an accounting. Macaire asserts that "Araujo and Holie did not have power to remove Macaire as President or terminate his employment contract with Jubilee," because of an agreement, "memorialized in an email chain on November 7, 2012," "prohibiting the partners from combining their shares against another partner in exchange for Macaire reducing his ownership share from 50% to an equal 33.3% for all partners." According to Macaire, this action by the plaintiffs is "a blatant and obvious tactic to pressure Macaire into accepting a well-below market value offer for his shares of Jubilee." Macaire asserts that, prior to signing the Franco Settlement, Araujo and Holie "demanded that Macaire sign a written side agreement where Macaire would agree that he would accept a greater share of the Franco Settlement liability before Holie and Araujo would agree to the settlement," but Macaire refused. Macaire, Araujo and Holie signed the Franco Settlement on behalf of Jubilee, and "Macaire and Araujo signed as individuals to be bound to pay the plaintiffs $175,000. The payments were due in installments, with a first payment of $50,000 and thereafter 20 more payments of $6,250 due every 30 days until paid off." Macaire asserts that "there has been no default of payments concerning the Franco Settlement." He alleges that, after signing the Franco Settlement, "Araujo sent multiple emails to Macaire asking to have a Board meeting to discuss his 'fair share' of the settlement, the election of the Board of Directors, and other issues." On December 1, 2016, Araujo and Holie arrived with their attorney to the board meeting. Macaire asserts that he asked to adjourn the meeting so he could obtain an attorney, but Araujo and Holie refused. Macaire declined to attend the board meeting, at which Macaire was removed as Jubilee's officer and his employment with Jubilee terminated. Macaire alleges that Araujo and Holie used corporate funds to pay personal expenses, including trips, car rentals, travel insurance, life insurance and

the cost to renovate their residence. Macaire seeks an accounting and "damages directly and derivatively," no less than $1,500,000, together with punitive damages and attorney's fees.

Before the court is the plaintiffs' motion for an order "granting summary judgment on their First and Second Causes of Action, and granting Plaintiffs summary judgment dismissing all of Defendant's counterclaims." The defendant opposes the motion.

## PLAINTIFF'S CONTENTIONS

The plaintiffs assert that Jubilee, Araujo and Macaire "are collectively responsible for paying the Settlement amount," and the Franco Settlement "does not address the issue of the apportionment of Ms. Araujo and Mr. Macaire's obligations to pay the Settlement sum of $175,000.00." According to the plaintiffs, Macaire "failed to corroborate his self-serving assertion that only Jubilee should pay," and the Court "should determine that Mr. Macaire must pay 75% of the settlement sum" because of: (1) "his complete and exclusive control of Jubilee, Inc. at all relevant times"; (2) "the fact that he serves [sic] as president of Jubilee at all relevant times"; and (3) "the fact that he had the ultimate authority to hire and fire employees until his termination on December 1, 2016." The plaintiffs contend that "Jubilee has paid the amounts due under the settlement each time an installment payment became due," and the Franco Settlement "has now been paid in full, exclusively with Jubilee's funds."

The plaintiffs contend that Macaire breached his fiduciary duty by using improperly, between 2012 and 2015, $261,303.98 of corporate money for his own benefit. Moreover, Macaire "lied to plaintiffs" about the purpose and destination of payments he made with corporate funds, including "the recurring payments for Doodle, LLC," a storage company, although "Jubilee never had a storage company or signed any storage contract."

Araujo and Holie contend that: (i) they did not breach any agreement; (ii) "Jubilee's board of directors had a statutory right to remove and terminate Mr. Macaire as president and employee of Jubilee"; and (iii) "Jubilee's corporate resolutions and certificate of incorporation do not contain any provisions regarding the appointment, election or removal of directors and officers;" thus, Macaire was removed and his employment terminated properly, since a "majority vote was a proper act of Jubilee's board and not an act of Jubilee's shareholders. Therefore, Ms. Araujo and Mr. Holie, in their capacity as directors of Jubilee did not breach any agreement and did not combine their shares when they removed and terminated Mr. Macaire, even though they had the right to do so." According to the plaintiffs, the November 7, 2012 email is not a contract because it contains open terms, and "Araujo never responded to it." Since the "final and binding Agreements were signed on November 27, 2012 and November 29, 2012," and "there is no reference whatsoever in these documents to any prohibition against the right of the shareholders to combine their shares," Araujo and Holie did not act improperly. Furthermore, "Macaire is prohibited by the parole evidence rule from using the November 7, 2012 email to impose obligations on Ms. Araujo and Mr. Holie not mandated by the agreement." Accordingly, Macaire's "first and second counterclaims based on the allegation that Ms. Araujo and Mr. Holie had no right to combine their shares because of the November 7, 2012 Email are meritless and should be dismissed." Araujo and Holie assert that they did not interfere with any contract because it is undisputed that: (a) "the Board of Directors had the authority pursuant to Jubilee's Board of Directors' resolution on November 29, 2012 to employ a public relations director for Jubilee, and therefore terminate such employee"; (b) "Macaire was hired at-will by Mr. Holie, as secretary of Jubilee"; and (c) Macaire signed an employment agreement which "does not contain

a durational employment protection or any limitation on Jubilee's Board of Director's right to discharge."

Araujo and Holie contend that Macaire's third and fourth counterclaims concerning the plaintiff's breach of fiduciary duty, waste of assets, mismanagement and oppression of a minority shareholder, should be dismissed because they lack evidentiary support. The plaintiffs maintain that "all of the funds used by Ms. Araujo and Mr. Holie have always been in compliance with the $2,000 allowance," and Macaire cannot prove that any transaction alleged in his counterclaims exceeds that allowance. Moreover, it is undisputed that the expenses, alleged by Macaire to have been used for his personal benefit and manipulated on Jubilee's general ledger, "were labeled by Dbooks and the books and records of Jubilee including the General Ledgers were all prepared by Cohn Reznick LLP, Jubilee's accounting firm, all independent parties."

In support of their motion, the plaintiffs submitted their Local Civil Rule 56.1 statement of material facts, Araujo's declaration with exhibit Nos. 1-10, and their counsel's declaration with exhibit Nos. 1-20. Exhibit 1 to Araujo's declaration is a "chart," accompanied by thousands of pages of "the bank records attached thereto."

**DEFENDANT'S CONTENTIONS**

Macaire contends that Jubilee's payment of the Franco Settlement amount was voluntary, and it has no right to contribution from him. Since the Franco Settlement "was entered into prior to judgment or adjudication" in this action, under New York General Obligations Law ("GOL") § 15-108(c), "any payments made by Jubilee Corp. were therefore voluntary and plaintiffs' claims for contribution are unrecoverable." Moreover, Araujo and Holie have no standing to

challenge the Franco Settlement as their complaint only asks for relief in equity on behalf of the corporation.

Macaire asserts that the plaintiff's cause of action for breach of fiduciary duty must be dismissed because "Araujo and Holie have no standing to bring a derivative suit, and they have not alleged a direct action." According to Macaire, "all alleged wrongs committed by Macaire involved mismanagement/theft/etc. of corporate assets—not wrongs that harmed plaintiffs Araujo and Holie in an individual shareholder capacity." Since the plaintiffs' breach of fiduciary duty cause of action "is derivative in nature on behalf of the corporation Jubilee" and Araujo and Holie have no standing to bring breach of fiduciary duty and conversion causes of action against Macaire, those causes of action must be dismissed. Moreover, the plaintiffs' breach of fiduciary duty cause of action alleging misappropriation of corporate funds for personal gain is barred by a three-year statute of limitations, pursuant to New York Civil Practice Law and Rules ("CPLR") § 214, and the plaintiffs did not commence this action until December 3, 2016. Macaire maintains that the plaintiffs waived their right to assert causes of action beyond three years because "the November 7, 2012 email set forth all expenditures made to or by Macaire prior to that date," which Araujo and Holie knew about and they approved "all expenditures for the next three years until their first protestation in May 2015."

Macaire asserts that the plaintiffs' "yearly expense chart," attached to Araujo's declaration as Exhibit 1, is inaccurate and incomplete because it "inflates Macaire's numbers, fails to account for his valid expenses, and does not include expenses or dividends of Araujo and Holie." Moreover, the chart "fails to identify cash taken," "loans that were paid back by Macaire" and "part of the windows for their home that were not in the chart." Macaire maintains

that he "stored restaurant equipment and other items at the Doodle LLC storage building," which Araujo and Holie knew.

Macaire contends that issues of material fact exist "as to whether there was [a] contract by and between the parties" because the Court's January 8, 2018 "decision and findings that material fact exists which substantiate a viable Breach of Contract Claim is the 'Law of the Case,'" preventing summary judgment on that claim. Macaire maintains that the "November 7, 2012 email constitutes a valid written operating agreement between the parties," and "Macaire either made a contract with Holie on November 6, 2012 in the meeting they all had to clarify expenses or he made a contract with Holie to form a voting block on November 7, 2012." Furthermore, "the oral agreement with Holie and Araujo during that November 6, 2012 meeting was a binding oral contract," memorialized in the November 7, 2012 email message. Macaire asserts that Araujo and Holie were barred from combining their shares and had no power to remove and fire Macaire; thus, they "enticed Jubilee Corp. to fire someone that Araujo and Holie had no power to file [sic]. This inducement is a breach and outside the business judgment rule. Holie and Araujo may be personally liable for this decision." Macaire asserts that his counterclaim for breach of contract should not be dismissed because "Araujo and Holie used corporate money to install windows and weatherproofing on their house without a corporate purpose," and "a full accounting will show more" incidents of their breach of fiduciary duty.

In support of his opposition to the motion, Macaire submitted his Local Civil Rule 56.1 response and counter-statement of material facts, his declaration and a declaration by his counsel with exhibits A-KKK.

**PLAINTIFFS' REPLY**

The plaintiffs assert that "Jubilee is entitled to indemnification and to contribution" and "GOL §15-108 is not applicable to indemnification"; thus, "Macaire should indemnify Jubilee for the amount Jubilee paid in excess of his equitable share of 75%." According to the plaintiffs, "because Mr. Macaire is a settling party GOL §15-108 does not bar contribution under CPLR §1401" and, "by filing this lawsuit seeking a determination of Mr. Macaire's equitable share a month after the Settlement was signed, plaintiffs evidently demonstrated that they did not intend to volunteer to pay in excess of their equitable share."

The plaintiffs contend that their claim for breach of fiduciary duty should be granted "as a matter of law" because: (1) Jubilee is a plaintiff in this action; (2) "CPLR §213(7) is the applicable statute of limitations for this cause of action"; and (3) the statute of limitations "was tolled until December 1, 2016, when Mr. Macaire was terminated and removed as employee and officer of Jubilee." Furthermore, the continuing wrong doctrine applies to breach of fiduciary duty cases, and "there is no dispute that Mr. Macaire continuously used Jubilee's funds at least until 2015." The plaintiffs assert that they have not waived their claim for damages because the November 7, 2012 email message is not a contract, and Araujo and Holie "repeatedly objected and requested justifications for Mr. Macaire's expenses long before May 2015."

The plaintiffs contend that "there s no genuine issue for trial," and the Court "should disregard Mr. Macaire's declaration which contradicts his prior testimony" because "the factual issues created solely by Mr. Macaire's Declaration crafted to oppose plaintiff's summary judgment motion are not 'genuine' issues for trial." According to the plaintiffs, the undisputed evidence shows that Macaire used over $200,000 of Jubilee's funds for non-corporate purposes, and he does not dispute that he "spent Jubilee's funds through Jubilee's Citibank account to pay

for the American Express credit card of Jubilee Inc., an inactive corporation fully owned by Mr. Macaire, in the amount of $114,825.30." "Besides expenses for Doodle LLC, Arnoff Storage, restaurants, pharmacy, hotels in New York City and check Mr. Macaire issued to himself, Mr. Macaire does not dispute that all other expenses were for non-corporate purposes." Macaire failed to identify any error or discrepancy in the chart attached to Araujo's declaration. The plaintiffs assert that Macaire's third and fourth counterclaims should be dismissed because Macaire "has yet to refute any of the numbers supported by Jubilee's bank statements or show any mismanagement" by Araujo or Holie. The Court "should rule as a matter of law that the November 7, 2012 email is not a contract." Moreover, the November 7, 2012 email message "does not satisfy the statute of fraud," and the Court's decision granting Macaire's motion to amend his answer and assert counterclaims is not the law of the case. In support of their reply, the plaintiffs submitted Araujo's declaration with exhibits A-M.

## LEGAL STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255, 106 S. Ct. at 2513. In deciding a

summary judgment motion, "[t]here is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S. Ct. at 2511. Thus, summary judgment is improper "[i]f reasonable minds could differ as to the import of the evidence." Id.

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
>
> 28 U.S.C. § 2201(a).

"Where subject matter jurisdiction is solely based on diversity, federal law determines whether there is a controversy before the Court within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201, and state law creates and determines the substantive rights and duties that may [be] vindicated through declaratory relief." Compass Bank v. Petersen, 886 F. Supp. 2d 1186, 1195-96 (C.D. Cal. 2012).

> The Declaratory Judgment Act, 28 U.S.C. § 2201, of course, neither creates nor enlarges jurisdiction; it merely creates an additional remedy where an actual controversy already exists. *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). As the Supreme Court elaborated in *Maryland Casualty v. Pacific Coal and Oil Company*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941): The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a

> substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
>
> Lowenstein v. Rooney, 401 F. Supp. 952, 959 (E.D.N.Y. 1975).

"The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). See, e. g., Fegley v. Higgins, 19 F.3d 1126, 1131 (6th Cir. 1994); Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 917 (9th Cir. 2003); Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002). "[T]he same standard applie[s] to the FLSA and NYLL claims." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 118 (2d Cir. 2013). Thus, violations of FLSA and NYLL "impose joint and several liability" on employers. Pineda v. Masonry Constr., Inc., 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011).

> A creature of tort law, joint and several liability "applies when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220–221, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount.
>
> Honeycutt v. U.S., __ U.S. __, 137 S. Ct. 1626, 1631 (2017).

"The settlement agreement is a contract that, if unambiguous, 'must be enforced according to the plain meaning of its terms.'" Erie Boulevard Hydropower, L.P. v. State of N.Y., 113 A.D.3d 906, 907, 978 N.Y.S.2d 436, 437 (App. Div. 3d Dep't 2014) (citation omitted). To insure "to all our able-bodied working men and women a fair day's pay for a fair day's work," "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL [Department of Labor] to take effect." Cheeks v. Freeport Pancake House, 796 F.3d 199, 206 (2d Cir. 2015). "In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were

directly caused by the defendant's misconduct." McSpedon v. Levine, 158 A.D.3d 618, 621, 72 N.Y.S.3d 97, 101 (App. Div. 2d Dep't 2018).

## UNDISPUTED FACTS

On November 16, 2016, a settlement agreement was approved between plaintiffs, Diego Franco, Mustapha Babaci and Juan Juarez, and defendants, Jubilee First Avenue Corporation, Ilda Araujo and Eric Macaire, in the action in this judicial district captioned Franco v. Jubilee First Avenue Corp., 14-CV-7729, commenced pursuant to FLSA and NYLL, and the case was terminated. The settlement agreement provided that "Defendants agree to pay to Plaintiffs the sum of One Hundred and Seventy[-]Five Thousand Dollars and Zero Cents ($175,000.00)," in 21 installments, "in full satisfaction of all issues between the Parties." The final installment was due to be paid 690 days after dismissal of the action. The settlement agreement does not contain any term concerning the apportionment of the obligations of each defendant in the Franco action to pay the settlement amount. Jubilee First Avenue Corporation paid to the plaintiffs the entire settlement amount of $175,000.00.

## APPLICATION OF LEGAL STANDARD

***Declaratory Judgment 28 U.S.C. § 2201***

In the complaint, the plaintiffs request a judgment declaring that "Macaire's equitable share of the Settlement Sum to be paid is no less than 75% of the Settlement Sum, while Ilda Araujo is only responsible for the balance of that sum," namely, "no more than 25%." Although the plaintiffs assert in the complaint that: (i) "[a]n actual controversy exists between the parties to this action within the meaning of 28 U.S.C. § 2201"; and (ii) "plaintiffs are entitled to a declaratory judgment of the respective equitable share of liability of the parties," in their memorandum of law in support of the motion they do not make citation to any legal authority

supporting their request for an "equitable share of liability of the parties" with respect to the Franco Settlement. The plaintiffs do not contend that the Franco Settlement agreement is ambiguous. It is undisputed that the Franco Settlement agreement: (a) provided that the defendants will pay the plaintiffs $175,000; and (b) was approved by the court pursuant to Cheeks, 796 F.3d 199. The Franco Settlement did not provide any term concerning the apportionment of the obligations of each defendant to pay the settlement amount, which is not surprising because liability under FLSA and NYLL is joint and several. See Pineda, 831 F. Supp. 2d at 686. The Franco Settlement agreement, providing for the defendants' payment of $175,000 in exchange for the release of the plaintiffs' claims under FLSA and NYLL against them, was approved by the court as fair and reasonable pursuant to the requirements of Cheeks. See Docket Entry No. 111 (Case 14-CV-7729). The plaintiffs failed to identify any legal basis permitting indemnification and contribution, the grounds that they assert for the first time in their reply to Macaire's opposition to their motion, in connection with the Franco Settlement agreement approved by the court pursuant to Cheeks. As the Franco Settlement agreement, FLSA and NYLL contemplate joint and several liability and do not include any provisions concerning an "equitable share" of the obligation to pay the settlement amount, including by each of the settling defendants in the Franco action, no substantive rights and duties that may be vindicated through declaratory relief: (1) existed at the time of the filing of complaint, December 23, 2016; and (2) continued to exist at the time of the instant motion, May 15, 2019, especially given that the Franco Settlement has already been paid. Accordingly, no justiciable controversy exists before the Court within the purview of the Declaratory Judgment Act, 28 U.S.C. § 2201, and granting summary judgment on this ground is not warranted.

***Breach of Fiduciary Duty and Macaire's Counterclaims***

In their Rule 56.1 statement, the plaintiffs assert:

> Mr. Macaire, Ms. Araujo and Mr. Holie opened a restaurant in May 2012 located at 948 1st Avenue, New York, NY 10022 ("Jubilee on First"). Jubilee on First is owned and operated by Jubilee [First Avenue Corporation]. (Answer and Counterclaims DE#51 at ¶8).

Docket Entry No. 115, ¶ 8.

However, Macaire in his answer denied the plaintiffs' allegations and his counterclaims, including paragraph No. 8, on which the plaintiffs rely, are not evidence. Thus, no evidence supports the plaintiffs' assertion that "a restaurant located at 948 1st Avenue, New York, NY 10022 ('Jubilee on First') . . . is owned and operated by Jubilee [First Avenue Corporation]." The plaintiffs assert further in their Rule 56.1 statement:

> Since the creation of Jubilee [First Avenue Corporation] on November 30, 2011, Mr. Macaire, Ms. Araujo and Mr. Holie have each owned one third of the shares of Jubilee [First Avenue Corporation]. (Ex. 9&10 to [Thomas] Vandenabeele Decl.; Ex. 5 to Vandenabeele Decl. at 17:7-22; and at 57:18-22.)

Docket Entry No. 115, ¶ 9.

Vandenabeele, the plaintiffs' attorney, asserts in his declaration that: (i) "Exhibit 9 is a true and correct copy of Exhibit 6 to Mr. Macaire's Deposition"; (ii) "Exhibit 10 is a true and correct copy of Exhibit 7 to Mr. Macaire's Deposition"; and (iii) "Exhibit 5 is a true and correct copy of Exhibit 2 to Mr. Macaire's Deposition (Mr. Macaire's deposition transcript in the Franco Case held on October 26, 2015)." Vandenabeele does not indicate that his declaration is based on personal knowledge and, since he was not an attorney of record in the Franco action in which Macaire's October 26, 2015 deposition was conducted, the basis for his assertions that Exhibits 5, 9 and 10 to his declaration are true copies of exhibits used during Macaire's October 26, 2015

deposition is not identified or explained. Thus, exhibits 5, 9 and 10 to Vandenabeele's declaration are not admissible evidence.

Araujo asserts in her declaration:

> As the numbers in the attached chart (and the bank records attached thereto) demonstrate (Exhibit 1), unlike Mr. Holie and I, Mr. Macaire spent much more of the corporate funds for his personal expenses than he was authorized to. Indeed, for the period beginning at the opening of Jubilee in May 2012 through December 2015, Mr. Macaire spent a total of $349,303.98, for a total allowance of $88,000 [44 months X $2,000] for that period. In other words, Mr. Macaire improperly spent $261,303.98 of Jubilee's money between May 2012 and December 2015 [$349,303.98 - $88,000].

Docket Entry No. 116, ¶ 17.

Araujo does not explain who prepared the chart, Exhibit 1 to her declaration, purporting to show "Eric's" "Ilda's" and "Luc's" expenses for 2012, 2013, 2014 and 2015, nor does she explain any part of each person's chart, appearing to contain columns labeled "Date," "Context," Description," "Amount" and "Exhibit." Araujo does not identify in her declaration a source(s) from which information in the chart, Exhibit 1, was obtained, and she does not refer to any part of each individual's purported yearly expenses in her declaration, as exemplified in the above-quoted paragraph No. 17 of her declaration. For example, Araujo contends that "[t]he figure of $349,303.98 includes $52,972.61 corresponding to payment that Mr. Macaire caused Jubilee to make to Doodle LLC by deceit," Docket Entry No. 116, ¶ 18, without identifying any part of Exhibit 1 in support of the assertion or any other evidence corroborating $52,972.61, the amount she alleges corresponds to payments Macaire caused Jubilee to make to Doodle LLC. Araujo asserts:

> On the other hand, the figure of $321,052.11 of corporate money Mr. Macaire improperly used to his personal benefit does not include the other employment benefits, which are health insurance and a company car (See employment agreement as Exh. 14 to Vandenabeele Aff.). This figure of $321,052.11 does not

> even include the following expenses: health insurance for Mr. Macaire's wife and children, Mr. Macaire's second car that is not authorized by his employment contract, Mr. Macaire's personal cable expenses, cellphone expenses for Mr. Macaire and his wife, and checks totaling $75,545.59 for the payment of Jubilee on 54th's debts.

Docket Entry No. 116, ¶ 19.

Araujo does not make citation to any part of Exhibit 1 or any other evidence in support of the alleged expenses incurred by Macaire "totaling $75,545.59."

Similarly, Araujo's allegations concerning her and Holie's expenditures are not supported by evidence. For example, Araujo asserts that she and Holie "respectively spent a total of $39,474.45 and $57,302.75 for a total allowance of $88,000 for each of us" from May 2012 through December 2015, Docket Entry No. 116, ¶ 20, without citation to any evidence. Araujo's Exhibit 1, although not referenced in paragraph 20 of her declaration, does not support the allegations because it is not admissible evidence, since it is not authenticated, its content is unexplained, and it is unknown who prepared it and from what source(s) the information contained therein was obtained. Furthermore, Araujo does not reference any part of Exhibit 1 nor does she identify any of the thousands of pages of "bank records attached thereto," in support of her allegations. Thousands of pages of purported "bank records" to which no affidavit was attached to authenticate them or to explain who prepared them and what they contain, without any reference to a particular page(s) contained in them in the memorandum of law or declarations in support of the motion, are not admissible evidence that can support Araujo's allegations or the plaintiffs' motion. Dumping thousands of pages on the Court without any reference to them in the moving papers is also wasteful of the Court's time and useless for the Court's determination of the motion. "'Judges are not like pigs, hunting for truffles buried in'

the record." Albrechtsen v. Bd. of Regents of the Univ. of Wis. System, 309 F.3d 433, 436 (7th Cir. 2002) (quoting U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

Notwithstanding the deficiencies in the plaintiffs' motion papers, a review of the record indicates that Macaire, Araujo and Holie did not have a formal, written agreement concerning the ownership and operation of Jubilee; rather, the parties dispute the meaning and effect of various email communications, in which those matters have been discussed, including Macaire's November 7, 2012 email communication sent to Araujo and Holie, the meaning and import of which is hotly contested by the parties. Moreover, the use of Jubilee's funds by all parties is similarly hotly contested and not undisputed. The plaintiffs failed to carry their burden of establishing that no genuine issue of material fact exists to be tried. Accordingly, granting summary judgment on the plaintiffs' breach of fiduciary duty cause of action and Macaire's counterclaims is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiffs' motion for summary judgment "on their First and Second Causes of Action" and "Defendants' Counterclaims," Docket Entry No. 112, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer, 40 Centre Street, Room 2201, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any

requests for an extension of time for filing objections must be directed to Judge Engelmayer. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
October 29, 2019

Respectfully submitted,

Kevin Nathaniel Fox
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE