UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILDA ARAUJO, LUC HOLIE, and JUBILEE FIRST
AVENUE CORPORATION,

                                   Plaintiffs,

             v.

ERIC MACAIRE,

                                   Defendant.

16 Civ. 9934 (PAE) (KNF)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jubilee First Avenue Corporation ("JFAC") owns and operates a restaurant, Jubilee on First. JFAC, along with plaintiffs Ilda Araujo and Luc Holie—JFAC shareholders, Board members, and officers—bring this action against defendant Eric Macaire, JFAC's former president. Plaintiffs allege that Macaire is liable for a portion of a settlement with former restaurant employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, in *Franco v. Jubilee First Avenue Corp.*, No. 14 Civ. 7729 (SN) (the "Franco Action"); violated his fiduciary duties as president by using JFAC's funds for his own personal benefit; and converted JFAC's website and Facebook page after he was terminated from JFAC. Macaire counterclaims, alleging that Araujo and Holie breached a November 7, 2012 contract; tortiously interfered with Macaire's employment contract; and, through a direct and derivative action, breached their fiduciary duties as officers of JFAC. Macaire also seeks an accounting.

Plaintiffs filed a motion for partial summary judgment, seeking summary judgment on (1) their claim for a declaratory judgment assigning the parties' respective settlement obligations for

the Franco Action, (2) their claim for Macaire's alleged breach of fiduciary duty, and (3) all of Macaire's counterclaims. Before the Court is the Report and Recommendation of the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, recommending that the Court deny plaintiffs' motion in full, Dkt. 129 ("Report"), as well as plaintiffs' Objections to the Report, Dkt. 130 ("Pl. Obj."), and Macaire's opposition to those Objections, Dkt. 131 ("Def. Opp. to Objs.").

For the reasons that follow, the Court adopts the Report in part, denying plaintiffs' motion for summary judgment as to their declaratory judgment and breach of fiduciary duty claims, as well as Macaire's breach of fiduciary duty and accounting counterclaims. The Court, however, grants plaintiffs' motion as to Macaire's breach of contract and tortious interference with contract counterclaims.

## I.    Background

### A.    Factual Background

The Court adopts the Report's account of the facts, to which neither party objects. *See* Report at 1–4, 13. The following summary captures the undisputed facts necessary to present and assess the issues at hand.[1]

---

[1] The Court draws its account of the facts of this case from the parties' submissions in support of and in opposition to plaintiffs' motion for summary judgment, including: plaintiffs' Local Rule 56.1 statement, Dkt. 115 ("Pl. 56.1"); the declaration of Thomas Vandenabeele, Esq., in support of plaintiffs' motion, Dkt. 113 ("Vandenabeele Decl."), and attached exhibits; the declaration of Ilda Araujo in support of plaintiffs' motion, Dkt. 116 ("Araujo Decl."), and attached exhibits; Macaire's Rule 56.1 response and counter-statement, Dkt. 124 ("Def. 56.1"); the declaration of Michael Driscoll, Esq., in opposition to plaintiffs' motion, Dkt. 119 ("Driscoll Decl."), and attached exhibits, *see* Dkts. 118–23; and the reply affidavit of Ilda Araujo in support of plaintiffs' motion, Dkt. 126 ("Araujo Reply Decl."), and attached exhibits.

### 1. Jubilee on 54th and Jubilee on First

In 1994, Macaire opened a restaurant called "Jubilee," located on 54th Street in New York, New York ("Jubilee on 54th").[2] Pl. 56.1 ¶ 1. This restaurant was owned by Jubilee Inc., which, in turn, was wholly owned by Macaire from 1994 until approximately 2002. *Id.* In 2002, Macaire transferred 40% of his shares to the chef, Pascal Petiteau; in 2009, Macaire reacquired full ownership of Jubilee Inc. *Id.* Macaire had ultimate control over Jubilee on 54th: He hired and fired employees, determined their wages, signed their paychecks, and generally oversaw affairs at the restaurant. *See id.* ¶ 2; Vandenabeele Decl., Ex. 2 (partial summary judgment opinion in the Franco Action) ("Franco Op.") at 11–12. Araujo worked at Jubilee on 54th, but her exact role—including whether she was a general manager or floor manager—is disputed. *See* Def. 56.1 ¶ 3; Franco Op. at 13–15.

---

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. However, the Court need not consider evidence not referenced in a party's 56.1 statement. *McCall v. Genpack, LLC*, No. 13 Civ. 1947 (KMK), 2015 WL 5730352, at *13 (S.D.N.Y. Sept. 30, 2015) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2003)); *see also Holtz*, 258 F.3d at 74 ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] Although plaintiffs cite to Macaire's Amended Answer and Counterclaims for some of these background facts about Jubilee on 54th, *see* Pl. 56.1 ¶ 1 (citing Dkt. 51 ("Answer") ¶¶ 19–20), these facts are undisputed by the parties, *see* Def. 56.1 ¶ 1, and also supported by Macaire's deposition, *see* Vandenabeele Decl., Ex. 3 ("Macaire Tr.") at 29–32, to which plaintiffs cite, *see* Pl. 56.1 ¶ 1.

In May 2012, Jubilee on 54th closed.  Pl. 56.1 ¶ 1; Macaire Tr. at 31–32.  At that time, Macaire, Araujo, and Holie opened another location on 1st Avenue in New York, New York ("Jubilee on First").[3]  Pl. 56.1 ¶ 8.  Jubilee on First is owned by JFAC.  Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.  JFAC was incorporated as a C corporation, *see* Driscoll Decl., Ex. A ("Macaire Decl.") ¶ 29; *see also id.*, Ex. M (certificate of incorporation), and was later converted into an S corporation for tax purposes, *see* Macaire Decl. ¶ 48; Driscoll Decl., Ex. FF (emails and tax forms related to S corporation selection).

### 2.  November 7, 2012 Emails and Later Agreements

On November 7, 2012 at 10:28 a.m., Macaire sent an email to Araujo and Holie.  Pl. 56.1 ¶ 14; *see also* Driscoll Decl., Ex. C (email from Macaire) ("Nov. 7, 2012 Macaire Email").  In that email, Macaire stated:

> OK we all have 33.3% percent [sic] of shares of the company which represents our eligible rights of percentage of the profit shares of 33.3% for each of us.
>
> Though, as discussed, our corporate shares in the company will have no rights to be combined to form a larger voting strength against one of the share holder[s]. [. . .]
>
> This new agreement is made in recognition that you are spending more time at Jubilee and I therefore accept to reduce my share of the company from 50% to 33.3% to equal yours.  Consequentially, I would like to have our contract stipulate (in the employment letter) that I am Public Relation[s] Director in charge of Business Development, Marketing and Legal Matters, but my presence at Jubilee is not a mandatory condition. [. . .]
>
> If you are OK with all this . . . [] I can draft these changes.  Show a proof for you to read before sending it to Alex [an attorney] . . . [] and we can have our contract finished and signed.

---

[3] Again, plaintiffs cite to Macaire's Amended Answer and Counterclaims for some background facts about Jubilee on First.  *See* Pl. 56.1 ¶ 8 (citing Answer ¶ 8).  Although the answer is not admissible to support these contentions, the parties do not dispute the background facts, *see* Def. 56.1 ¶ 8, and they are supported by Macaire's deposition, *see* Macaire Tr. at 31–32.

Nov. 7, 2012 Macaire Email at 2.  At 10:56 a.m., Holie responded in French, signing the email, "Ilda Luc."  Driscoll Decl., Ex. D (email chain with Holie's response) at 2.

That afternoon, Macaire sent another email to Araujo and Holie.[4]  Vandenabeele Decl., Ex. 1 (second email from Macaire).  Macaire asked Araujo and Holie to "[p]lease review the letter that I prepare[d] for Alex.  Let me know if it is ok with you and I will send it to him."  *Id.* Macaire further stated that "[t]o simplify the document I suggest that we do not include our understanding that I will receive (if any) 50% of the profit for the month[s] of June to November 2012.  I trust that we can do this without including it here.  Though, if you prefer I have no issues with including it.  I just think it is not necessary to complicate the document."  *Id.*  Macaire proposed to send Alex, an attorney, the following:

> Ilda, Luc and I had a meeting yesterday and have decided to make some change[s] to the structure of Jubilee First Avenue Inc.
>
> We have agreed to even out the shares of the company among us.  The 200 per value [sic] shares should be divided equally between Ilda, Luc and Eric.  In [c]ompensation it should read for all 3 "You will be eligible for a bonus equal to one third (1/3rd) of the net revenues less . . . ."
>
> The salaries remain the same equal at $120k per year.

*Id.*  The email did not mention any condition bearing on whether plaintiffs could combine their shares—an issue relevant, as discussed *infra*, to Macaire's breach of contract and tortious interference counterclaims.  *See id.*; *see infra* at pp. 20–24.

In a resolution dated November 29, 2012, JFAC's Board—consisting of Macaire, Araujo, and Holie—appointed Macaire as JFAC president, Araujo as treasurer, and Holie as secretary, and granted them each one-third of JFAC's shares.  Pl. 56.1 ¶ 10; Vandenabeele Decl., Ex. 13

---

[4] The parties do not mention this email in their respective 56.1 statements.  However, the Court has discretion to overlook failure to comply with local rules, including Local Rule 56.1, and to conduct an independent review of the record.  *See Holtz*, 258 F.3d at 73.

("Nov. 29, 2012 Resolution").[5]  That same resolution also authorized the Board to employ a

chef, general manager, and public relations director for Jubilee on First.  Pl. 56.1 ¶ 10.  As

reflected in employment agreements dated November 27, 2012, Macaire was employed as public

relations director, Araujo as general manager, and Holie as chef.  *See id.* ¶ 15; Vandenabeele

Decl., Ex. 14 ("Nov. 27, 2012 Employment Agreements").  The agreements granted them each a

$2,000 per month "personal expense allowance," which could be deferred so one could spend

more than $2,000 in a month without a violation.  Pl. 56.1 ¶¶ 18–19.  Neither the resolution nor

the agreements included a prohibition on the combination of shares.  *Id.* ¶ 17;[6] *see also* Nov. 29,

2012 Resolution; Nov. 27, 2012 Employment Agreements.

### 3. The Franco Action and Settlement

In 2014, several former employees of Jubilee on 54th and Jubilee on First brought a suit

against JFAC, Araujo, and Macaire under the FLSA and the NYLL.  Franco Op. at 1–2.  On

November 16, 2016, the Honorable Sarah Netburn, United States Magistrate Judge, approved a

settlement agreement, *see* Vandenabeele Decl., Ex. 10 (the "Franco Agreement"), and closed that

case.[7]  Pl. 56.1 ¶ 4.  Under the Franco Agreement, JFAC, Araujo, and Macaire agreed to pay the

plaintiffs $175,000 in several installments in full and final satisfaction of all issues in that suit.

*Id.* ¶ 5.  The Franco Agreement does not address the apportionment of JFAC, Araujo, and

---

[5] The resolution document indicates that it is memorializing a corporate resolution made on
October 27, 2012 at 2 p.m.  Nov. 29, 2012 Resolution at 1.

[6] Macaire states that "those resolutions are not supposed to address voting shares or prohibition
in same."  Def. 56.1 ¶ 17.  Even if that assertion is viewed in the light most favorable to him, it
does not make disputed the fact that the resolution and employment agreements do not, on their
face, contain any prohibition or reference to combination of shares.

[7] The parties in the Franco Action consented to proceed before Judge Netburn for all purposes.
*See* No. 14 Civ. 7729 (SN), Dkt. 11.

Macaire's obligations to pay the $175,000.  *Id.* ¶ 6.  JFAC paid 100% of the settlement, *see* Araujo Decl. ¶ 30; Macaire has refused to contribute personally to the settlement, Pl. 56.1 ¶ 7.

### 4.    Macaire's Removal

On December 1, 2016, the JFAC Board of Directors held a meeting.  *Id.* ¶ 23.  At that meeting, Araujo and Holie voted to remove Macaire as JFAC president and to terminate his employment as public relations director.[8]  *Id.*; *see also* Driscoll, Ex. II ("Dec. 1, 2016 Resolution").

### B.    This Litigation

On December 23, 2016, plaintiffs commenced this action.  Dkt. 1 ("Compl.").  On March 9, 2017, the Court referred this case to Judge Fox for general pretrial management. Dkt. 12.  On January 1, 2018, Macaire filed an answer that included his counterclaims.  Dkt. 51; *see also* Dkt. 128.  On September 7, 2018, plaintiffs filed a pre-motion letter, outlining their arguments in support of their anticipated summary judgment motion.  Dkt. 78; *see also* Dkt. 81. On October 2, 2018, the Court amended its order of reference, referring the anticipated summary judgment motion to Judge Fox for a Report and Recommendation.  Dkt. 82.

On May 15, 2019, following a delay for motions practice and resolution of discovery issues, plaintiffs filed their motion for summary judgment, Dkt. 112, accompanied by a memorandum of law, Dkt. 114 ("Pl. Mem."), plaintiffs' Rule 56.1 statement, Dkt. 115, the Vandenabeele Declaration and attached exhibits, Dkt. 113, and the Araujo Declaration and attached exhibits, Dkt. 116.  On June 6, 2019, Macaire filed his memorandum of law in opposition, Dkt. 117 ("Def. Mem."), his Rule 56.1 response and counterstatement, Dkt. 124, and

---

[8] Macaire disputes whether Holie and Araujo "constitute[d] a validly elected Board of Directors," because he asserts that they had agreed not to combine their shares.  Def. 56.1 ¶ 23. The Court addresses Holie and Araujo's roles as both directors and shareholders *infra.*

the Driscoll Declaration and attached exhibits, *see* Dkts. 118–23.  On June 13, 2019, plaintiffs filed their reply memorandum, Dkt. 125 ("Pl. Reply"), and the Araujo Reply Declaration and attached exhibits, Dkt. 126.

On October 29, 2019, Judge Fox issued the Report.  Dkt. 129.  The Report recommended denying summary judgment for plaintiffs on their declaratory judgment and breach of fiduciary duty claims and on Macaire's counterclaims.  *Id.* at 18.  First, as to plaintiffs' declaratory judgment claim, the Report found that, with regard to the Franco Settlement, plaintiffs had not identified a legal basis for their claim for an "equitable share" of the settlement and thus had not raised a justiciable controversy under the Declaratory Judgment Act, 28 U.S.C. § 2001.  *Id.* at 14. Second, as to plaintiffs' breach of fiduciary duty claims, the Report found that the use of Jubilee's funds was a disputed factual issue.  *Id.* at 18.  It also held that plaintiffs had relied on inadmissible evidence in support of their claim, including, most importantly, a chart compiling Macaire, Araujo, and Holie's alleged personal spending of corporate funds, *id.* at 16–17; *see also* Araujo Decl., Ex. 1 ("Chart"), and thousands of pages of bank records, Report at 17.  Last, as to Macaire's counterclaims, the Report held that there were disputed issues of material fact.  *See id.* at 17–18.  For Macaire's counterclaims, alleging breach of contract and tortious interference with a contract, it found that the parties did not have a formal, written agreement concerning the ownership and operation of Jubilee, and that the meaning of the November 7, 2012 Macaire email was hotly contested.  *Id.* at 18.  And for the breach of fiduciary duty counterclaims, it found that the use of Jubilee's funds was disputed, and that plaintiffs had not submitted admissible evidence to support a grant of summary judgment for them on those claims.  *See id.* at 17–18.

On November 12, 2019, plaintiffs timely filed their Objections.  Dkt. 130.  On

November 26, 2019, Macaire filed his opposition to the Objections.  Dkt. 131.  On December 3,

2019, plaintiffs filed a reply.  Dkt. 132.

## II.     Applicable Legal Principles

### A.        Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must

determine de novo any part of the magistrate judge's disposition that has been properly objected

to."  Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  To

accept those portions of the report to which no timely objection has been made, "a district court

need only satisfy itself that there is no clear error on the face of the record."  *King v. Greiner*,

No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. UPS*,

262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342,

346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or

simply reiterates the original arguments, the court will review the report and recommendation

strictly for clear error.  *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094,

at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH),

2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012); *Kirk v. Burge,* 646 F. Supp. 2d 534, 538

(S.D.N.Y. 2009) (collecting cases).  Further, "[c]ourts generally do not consider new evidence

raised in objections to a magistrate judge's report and recommendation."  *Tavares v. City of New

York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011).

## B. Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### III.    Discussion

Plaintiffs object to the Report on several grounds.  First, they argue that the Report erred in finding that their declaratory judgment claim was non-justiciable.  *See* Pl. Obj. at 24–25.  Second, plaintiffs object to the Report's finding, in connection with their breach of fiduciary duty claim, that how JFAC's funds were used was a disputed fact, and the Report's finding that a chart and bank records were inadmissible.  *See id.* at 6–20.  Third, they contend that the Report erred, when addressing the breach of contract and tortious interference counterclaims, in finding that there was no formal written agreement as to JFAC's operations and in failing to find that Araujo and Holie had a statutory right, as Board members, to remove Macaire.  *See id.* at 20–22.  Last, plaintiffs object that the Report failed to consider admissible evidence, namely the chart and bank records, when deciding the breach of fiduciary duty counterclaims.  *See id.* at 22–24.  The Court addresses each in turn.

#### A.    Declaratory Judgment Claim (Count One)

Plaintiffs seek summary judgment on their declaratory judgment claim, which asks the Court, under the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine the "equitable shares" of each of Araujo, Macaire, and JFAC of the $175,000 Franco Settlement.  *See* Pl. Mem. at 8–9.  Specifically, they ask the Court to find that Macaire's equitable share is no less than 75% and Araujo's is no more than 25%, based on their respective roles at Jubilee on 54th and Jubilee on First.  *See id.* at 11–12.  The Report held that plaintiffs had failed to raise a justiciable controversy, because they had failed to identify any legal basis—including a lack of any apportionment clause in the Franco Settlement, the FLSA, or the NYLL—to support their claim of indemnification and contribution for an "equitable share."  *See* Report at 14.  Plaintiffs object that the Report erred in finding that they had failed to raise a justiciable controversy under the

Declaratory Judgment Act, arguing that New York indemnification and contribution law provides a legal basis for their claim. Pl. Obj. at 24.

Plaintiffs had already raised the basis for their Objection in their reply brief submitted to Judge Fox. *See* Pl. Reply at 2–3. Because plaintiffs simply reiterate their previous arguments, clear error review is appropriate. *See Dickerson*, 2013 WL 3199094, at *1. The Court finds—under both clear error and *de novo* standards of review—that plaintiffs have failed to raise a justiciable controversy and adopts the Report's recommendation to deny summary judgment on the declaratory judgment claim.

The Declaratory Judgment Act enables a district court, for "a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Under the Act, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Carr v. DeVos*, 369 F. Supp. 3d 554, 563 (S.D.N.Y. 2019) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). "But that discretion does not extend to the declaration of rights that do not exist under law." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). The Declaratory Judgment Act supplies the remedy of a declaratory judgment, but not the underlying cause of action. *See id.* at 244–45 ("The DJA is procedural only . . . and does not create an independent cause of action." (internal quotation marks and citations omitted)); *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 169 (S.D.N.Y. 1999). To maintain an action for a declaratory judgment, a plaintiff instead must allege a cause of action, or "a substantive claim of right," based on either federal or state law. *See In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730–31 (2d Cir. 1993); *see also Garcia v. Nat'l Contractors Ins. Co.*, No. 15 Civ. 1332 (CBA), 2015 WL 7016968, at *1–2 (E.D.N.Y. Nov. 12, 2015) (dismissing complaint because neither

federal nor state law provided cause of action). Otherwise, "[a] prayer for relief, standing alone, simply does not satisfy the requirement that a case or controversy exist." *Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012).

Plaintiffs' first claim is for a "declaratory judgment" related to the "equitable share of liability of the parties" under the Franco Settlement, *see* Compl. ¶ 49, but their Complaint fails to allege any underlying cause of action under which that claim can proceed, *see id.* ¶¶ 40–49. And the Franco Agreement itself cannot support such a cause of action, because it does not apportion the $175,000 among JFAC, Araujo, and Macaire, or discuss the parties' "equitable shares." *See* Pl. 56.1 ¶ 6.

In an attempt to save their claim, plaintiffs raise, in their reply brief, the possibility that New York indemnification and contribution law supplies the causes of action—they argue that JFAC was entitled to indemnification under New York common law and to contribution under New York C.P.L.R. § 1401 because it had paid more than its equitable share of the Franco Settlement. *See* Pl. Reply at 2–3. The Court could deny plaintiffs' motion without further consideration, as it is not required to consider causes of action raised for the first time in a reply brief. *See U.S. ex rel. Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997). The Court, however, does consider plaintiffs' arguments and finds, as an independent basis for denying the motion, that New York indemnification and contribution law cannot support their claim for a declaratory judgment.

The Franco Agreement resolves claims by former Jubilee employees alleging that JFAC, Macaire, and Araujo violated the FLSA and the NYLL. *See* Franco Agreement at 1. A corporation, along with individual defendants who are "employers," are jointly and severally liable for unpaid wages under the FLSA and the NYLL. *See Schalaudek v. Chateau 20th St.*

*LLC*, No. 16 Civ. 11 (WHP), 2017 WL 1968677, at *1 (S.D.N.Y. May 11, 2017); *see also Leddy*

*v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir. 1989) ("[C]ourts have consistently held

that a corporate officer with operational control who is directly responsible for a failure to pay

statutorily required wages is an 'employer' along with the corporation, [and] jointly and

severally liable for the shortfall."); *Moon v. Kwon*, 248 F. Supp. 2d 201, 237–38 (S.D.N.Y. 2002)

(holding corporate president and corporation jointly and severally liable under FLSA and

NYLL).  Here, JFAC, Araujo, and Macaire were jointly and severally liable for $175,000 under

the Franco Agreement.[9]  *See* Franco Agreement ¶ 1(a) (JFAC, Araujo, and Macaire agreed to

pay $175,000 for release of FLSA and NYLL claims).  JFAC then paid the $175,000 in full.  *See*

Araujo Decl. ¶ 30.

JFAC cannot seek contribution or indemnification for its payment under the FLSA and

NYLL settlement.  The Second Circuit has held that there is no right of contribution or

indemnification for violations of the FLSA.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 136,

143–44 (2d Cir. 1999); *see also Scalia v. Emp'r Sols. Staffing Grp.*, 951 F.3d 1097, 1103–05

(9th Cir. 2020) (adopting Second Circuit's reasoning in *Herman* and rejecting argument that joint

and several liability necessitates right to contribution).  In *Herman*, the Circuit determined that

the FLSA did not explicitly or impliedly support an employer's claims of contribution or

indemnification, "regardless of the status of the party from whom he [sought] contribution."

*Herman*, 172 F.3d at 143.  It also rejected the argument that an employer could alternatively

---

[9] In the Franco Action, Judge Netburn held that Macaire was an "employer" for purposes of the FLSA and NYLL.  Franco Op. at 11–13.  She also found that Araujo was an "employer" at Jubilee on First but that there were fact issues concerning her role at Jubilee on 54th.  *Id.* at 13–15.  After Judge Netburn issued her summary judgment opinion, the parties settled.  The Court here need not determine whether Araujo was an "employer" at Jubilee on 54th, as she was a party to the Franco Agreement and, as discussed *infra*, JFAC is unable to seek contribution or indemnification for its payments.

pursue contribution and indemnification claims under New York law because, it held, the FLSA's "sufficiently comprehensive" remedial scheme preempted any such state law. *Id.* at 144.

The Franco Agreement, however, is based not only on the FLSA but also on the NYLL. A federal court generally can recognize a right of contribution or indemnification under state law where "state law supplie[s] the appropriate rule of decision." *Id.* (alteration in original) (quoting *Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 97 n.38 (1981)). District courts, however, have expanded the Circuit's reasoning in *Herman*, holding that the NYLL, which is similar to the FLSA, also cannot support contribution or indemnification claims. *See, e.g.*, *Mitropoulos v. 401 Sunrise Corp.*, No. 17 Civ. 3618 (ENV), 2019 WL 2452348, at *1 (E.D.N.Y. June 12, 2019); *Holt v. Animation Collective, Inc.*, No. 13 Civ. 2552 (KBF), 2014 WL 1413548, at *3 (S.D.N.Y. Apr. 10, 2014); *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013); *Goodman v. Port Auth. of N.Y. and N.J.*, 850 F. Supp. 2d 363, 388–89 (S.D.N.Y. 2012); *Ansoumana v. Gristedes Operating Corp.*, No. 00 Civ. 253 (AKH), 2003 WL 30411, at *1 (S.D.N.Y. Jan. 3, 2003); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 328 n.8 (S.D.N.Y. 2001). The NYLL's bar on contribution and indemnification claims extends to attempts to utilize New York common law or other contracts and agreements as the source of contribution or indemnification, when the underlying claim is based on the NYLL. *See Gustafson*, 171 F. Supp. 2d at 328 (dismissing defendants' third-party claim for indemnification that was based on contractual indemnification clause and holding that "[d]efendants' attempt to characterize their claim as a request for breach of contract damages rather than an action for indemnification under the FLSA [and NYLL] is unpersuasive"); *see also Holt*, 2014 WL 1413548, at *3 (dismissing defendant's cross-claim for indemnification of FLSA and NYLL settlement that was based on New York indemnification

law); *Flores*, 942 F. Supp. 2d at 278 (dismissing defendants' counterclaim for contribution that was based on "the doctrine of contributory negligence and joint employer liability [to the extent that such claims are] not preempted by the FLSA" (alteration in original)); *Goodman*, 850 F. Supp. 2d at 388–89 (dismissing defendants' cross-claim that was based on contractual indemnification clause). Consequently, JFAC cannot rely on New York indemnification and contribution law to recover damages for a settlement based on the NYLL.[10]

The Court therefore adopts the Report's recommendation and denies plaintiffs' motion for summary judgment on their declaratory judgment claim. Macaire has not cross-moved for summary judgment on plaintiffs' declaratory judgment claim, and the Court declines at this time to *sua sponte* grant him summary judgment on, or to dismiss, that claim.

### B. Breach of Fiduciary Duty Claim (Count Two)

Plaintiffs also seek summary judgment on their claim for breach of fiduciary duty, wherein they assert that Macaire improperly used JFAC's corporate funds for his personal benefit and lied about the purpose and destination of payments that he had made. *See* Pl. Mem. at 12–16; Compl. ¶¶ 50–54. They argue that Macaire, through these alleged acts, violated his duty as an officer and director, under New York law, to act in "good faith and with that degree of

---

[10] Even if plaintiffs were not barred from invoking New York contribution and indemnification law, it is not clear that such law could support contribution or indemnification here. *See Matzinger v. MAC II, LLC*, No. 17 Civ. 4813 (DLC), 2018 WL 3350328, at *3 (S.D.N.Y July 9, 2018) ("New York law limits claims for contribution to tort actions, in circumstances when 'two or more persons [are] subject to liability for damages for the same personal injury, injury to property or wrongful death.'" (alteration in original) (quoting N.Y. C.P.L.R. § 1401)); *Goodman*, 850 F. Supp. 2d at 390 (New York common law indemnification claims are barred where the party seeking indemnification intentionally caused injury). In any event, even if such a claim were viable, the Court would be unable at this stage to determine the parties' "equitable shares," because, among other reasons, there are disputed facts concerning Araujo's role. *Compare* Pl. 56.1 ¶ 3 (characterizing Araujo as "floor manager" at Jubilee on 54th), *with* Def. 56.1 ¶ 3 (disputing that characterization and stating that she was a "General Manager").

care which an ordinarily prudent person in a like position would use under similar circumstances." N.Y. Bus. Corp. Law § 717(a) (directors); *id.* § 715(h) (officers). As evidentiary support, plaintiffs rely on bank records and a chart that summarizes those records. *See generally* Chart. The Report declined to rely on the chart or the bank records, holding that such documents had not been authenticated and were inadmissible. *See* Report at 16–17. Further, the Report found that the alleged misuse of JFAC's funds was "hotly contested and not undisputed" and thus denied plaintiffs' summary judgment on the breach of fiduciary duty claim. *Id.* at 18. Plaintiffs object that the Report erred in concluding that the chart and bank records were inadmissible and contends that when this evidence is considered, the manner in which JFAC's funds were used is not disputed. *See* Pl. Objs. at 6–20.

The Court finds it unnecessary to determine, at this stage, whether plaintiffs would be able to demonstrate the authenticity and admissibility of the chart and bank records at trial. Even assuming that all of these documents are admissible, there are still genuine issues of material fact that preclude the Court from granting summary judgment for plaintiffs.

Factual disputes exist on the face of the parties' 56.1 statements. Plaintiffs, citing to the chart as their evidence, assert that it is undisputed that Macaire "harmed Jubilee, Ms. Araujo and Mr. Holie by treating Jubilee as his piggy bank, repeatedly taking Jubilee's money for his personal expenses," including by "exceed[ing] the allowance provided for in his employment contract by at least $261,303.98 in personal expenses." Pl. 56.1 ¶ 12 (citing Chart). Macaire disputes these contentions, stating that the chart is "a summary of multiple records, accountings, and personal interpretation" and is "highly flawed and incomplete," citing to various pieces of evidence in response, including, *inter alia*, his declaration; the declaration of Justin McAuliffe, JFAC's former accountant; Araujo's deposition; email exchanges concerning certain expenses;

and handwritten notes and other documentation of some expenses. *See* Def. 56.1 ¶ 12 (citing

Macaire Decl. ¶¶ 71–80; *id.*, Ex. B ("McAuliffe Decl."); *id.*, Ex. F ("Araujo Tr.") at 262; *id.*,

Ex. DD (email from Macaire to Ilda and Araujo explaining Doodle LLC storage charges); *id.*,

Ex. VV (email from Macaire to new owner of Jubilee on 54th building describing items to be

removed from the premises and stored); *id.*, Ex. XX (Macaire's handwritten expenses for

opening new restaurant); *id.*, Ex. III (loan agreement between Macaire and JFAC); *id.*, Ex. KKK

(photographs of checks, including some for Araujo and Holie's home)).

A review of the record supports the Report's conclusion—and Macaire's 56.1 assertion—

that the manner of use of JFAC's funds is disputed. Even if the chart accurately reflects the

transactions it purports to summarize, a likely decisive question is whether these transactions

represented business expenses or personal expenses. Plaintiffs assume that Macaire's expenses

reflected in the chart are all, or almost all,[11] personal expenses. *See* Pl. Obj. at 9–20; *see also*

Chart at 3–27. Macaire disputes that assumption, including based on his firsthand account as a

percipient witness. In his sworn declaration, he asserts that many of these expenses were in fact

made for business purposes. For example, Macaire states that the following expenses were

business-related: expenses associated with opening the new Jubilee on First Restaurant, *see*

Driscoll Decl., Ex. XX (handwritten accounting of such expenses); storage of equipment from

Jubilee on 54th at Doodle LLC, *see id.*, Ex. DD (email from Macaire to Araujo and Holie

explaining such charges); *id.*, Ex. VV (email from Macaire to new owner of Jubilee on 54th

building describing items to be removed from the premises and stored); storage of Jubilee on

---

[11] In her reply declaration, Araujo states that, "[w]ithout conceding that 1) the alleged check for
$11,801 on October 18, 2013 . . . was in fact a loan that Mr. Macaire reimbursed [], and 2) that
the expenses for hotels in New York in the total amount of $3,537.95 were proper business
expenses," his total personal expenses, after deducting those two items, still exceeded his
allowed $88,000 of personal expenses from 2012 to 2015. Araujo Reply Decl. ¶ 7.

54th and Jubilee on First's records at Arnoff Moving and Storage; eating at other restaurants, which assisted Macaire with research and development, marketing, and competitor research; purchase of supplies and food for the restaurant; purchase of gas for travel; and hotels in New York City, which Macaire, who lived in Connecticut, stayed in when he needed to be at the restaurant. Macaire Decl. ¶¶ 73–74, 76–77. Macaire's account is partially corroborated by McAuliffe. McAuliffe affirms that he reviewed Macaire's 2012 expenses related to the building and opening of Jubilee on First and that these were valid business expenses. McAuliffe Decl. ¶ 39. He also attests that expenses for dining were business expenses for marketing, research and development, competitive shopping, or competitor research. *Id.* ¶ 40. These declarations create an issue of fact that precludes resolution of this case on summary judgment.

In addition to arguing that plaintiffs have mischaracterized business transactions as personal, Macaire asserts that some transactions in plaintiffs' chart are inaccurate. *See* Def. 56.1 ¶ 24; Macaire Decl. ¶ 79. For example, Macaire notes that the chart states that on October 18, 2013, he took a check for $11,801, but he attests that that transaction was actually a loan that was paid back through a reduction in his salary. *Id.* (citing Driscoll Decl., Ex. III (loan agreement)). Macaire also, in his briefing, cites to charges for two company cars, which he had purchased and proposed reducing his salary to offset. *See* Def. Opp. to Objs. at 6; Driscoll Decl., Ex. EEE (email from Macaire to Aruajo and Holie explaining purchase of cars).

Plaintiffs dispute at least some of Macaire's characterizations of expenses.[12]  For

example, they challenge the $52,972.61 in charges associated with Doodle LLC.  Macaire asserts

that Doodle LLC, a company owned by him and his wife, supplied needed storage for Jubilee on

54th's supplies.  *See* Macaire Decl. ¶ 73; *see also* Driscoll Decl., Ex. DD (email explaining

Doodle LLC charges).  Plaintiffs, on the contrary, argue that these payments were not for storage

but for Macaire to siphon off money to his wife.  *See* Araujo Decl. ¶ 18.  Factual disputes such as

this one, which is fairly representative of the parties' disagreements, are properly suited for a

finder of fact.  Accordingly, viewing the full record in the light most favorable to Macaire, the

Court finds that genuine issues of material fact exist concerning his expenses and the purposes of

such expenses.  The Court therefore denies plaintiffs summary judgment on their fiduciary duty

claim.[13]

### C.    Breach of Contract and Tortious Interference Counterclaims (Counterclaims One, Two, and Five)

Plaintiffs also seek summary judgment on Macaire's counterclaims.  These include two

claims of breach of contract, based on Araujo and Holie's alleged breach of an alleged agreement

not to combine their shares.  This agreement, Macaire contends, is evidenced by the November

7, 2012 email chain.  *See* Answer at 32–34; Def. Mem. at 15.  Macaire argues that Araujo and

---

[12] Plaintiffs attempt to discount Macaire's Declaration by arguing that the Court should disregard it because it contradicts Macaire's prior deposition testimony and his failures to turn over documents in response to discovery requests.  *See* Pl. Reply at 5–6.  The Court declines to do so, because Macaire's Declaration is not squarely inconsistent with his deposition.  There, Macaire testified that certain charges went to pay valid business expenses, Macaire Tr. at 276, and that he had failed to produce documentation for some of these because the business purpose of expenses was labeled on the checks themselves and he had given documentation and receipts to Araujo, JFAC's treasurer, *see id.* at 204.

[13] In light of this ruling, the Court has no occasion to consider Macaire's alternative arguments that Araujo and Holie do not have standing to bring a derivative suit and that some of plaintiffs' claims are barred by the statute of limitations.

Holie violated this agreement when they voted to terminate him as president and public relations director of JFAC. *See* Answer at 33; Def. Mem. at 15. Macaire also brings a third counterclaim, for tortious interference with contract, in which he alleges that Araujo and Holie did not have authority to remove him as president and public relations director and that they improperly interfered with his employment agreement with JFAC when they did so. Answer at 40–41.

Judge Fox's Report recommended denying summary judgment as to the counterclaims. He found that there was no formal, written agreement concerning the operation of JFAC and that the meaning of the November 7, 2012 emails was "hotly contested." Report at 18. Plaintiffs object that the November 29, 2012 resolution and the November 27, 2012 employment agreements, not the November 7, 2012 emails, served as the parties' agreement. Pl. Obj. at 20. Further, they object that the Report failed to consider whether Araujo and Holie had a statutory right, as directors, to remove Macaire, and that it failed to address their arguments in opposition to the tortious interference counterclaim. *Id.* at 21–22.

In their Objections, plaintiffs reiterate arguments that they made before Judge Fox, making clear error review appropriate. Nevertheless, even applying such deferential review, the Court declines to adopt the Report's recommendation. The Court instead finds that summary judgment is warranted for plaintiffs on these three counterclaims because Araujo and Holie had the lawful authority as directors to remove Macaire, both from his position as president and as public relations director.[14]

---

[14] Because the Court rests its holding on Araujo and Holie's rights as directors, it need not consider separate arguments based on the November 7, 2012 emails. Even assuming, without deciding, that such emails constituted a valid agreement, that agreement would have only affected only Araujo and Holie's rights as *shareholders*, not directors. *See* Nov. 7, 2012 Macaire Email at 2 ("[A]s discussed our corporate shares in the company will have no rights to be combined to form a larger voting strength against one of the share holder[s].").

Araujo and Holie undeniably had the authority to remove Macaire as president of JFAC. Under New York law, a board of directors may elect or appoint officers, including a president, N.Y. Bus. Corp. Law § 715(a), and may remove, with or without cause, any officer whom it has appointed, *id.* § 716(a). *See also Weiss v. Opportunities for Cortland Cty., Inc.*, 337 N.Y.S.2d 409, 411 (3d Dep't 1972) ("In the course of its duties a board of directors may appoint or remove any officer of the corporation with or without cause."). JFAC does not have a charter, by-laws, or other resolutions that change these default rules. Here, Macaire was appointed as president by the Board. Nov. 29, 2012 Resolution at 1 ("[T]he board of directors decided that . . . Eric Macaire shall serve as President of the Corporation."). He was also removed by Araujo and Holie, acting in their capacity as directors. *See* Dec. 1, 2016 Resolution at 1 ("[B]y a majority vote of the directors, the following resolutions were duly adopted: . . . RESOLVED, that Mr. Eric Macaire be, and he hereby is removed from the office of President of Jubilee First Avenue Corporation. Such removal is effective immediately."); *see also* Driscoll Decl., Ex. JJ (letter from Araujo and Holie's counsel explaining that Macaire had been removed as president). At the December 1, 2016 meeting of the Board of Directors, Araujo and Holie were present—Macaire decided not to attend, *see* Macaire Decl. ¶ 64—and constituted a quorum. *See* N.Y. Bus. Corp. Law § 707 (unless provided otherwise in certificate of incorporation, quorum is majority of directors). Their majority vote was sufficient to remove Macaire. *See id.* § 708(d) (majority vote is act of board).

Similarly, Araujo and Holie also had the authority to terminate Macaire's employment as public relations director. Under New York common law, "[a]bsent an agreement establishing a fixed duration, an employment relationship in New York is presumed to be a hiring at will, terminable at any time by either party." *De Petris v. Union Settlement Ass'n*, 86 N.Y.2d 406,

410 (1995); *see also Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) ("New York law is clear that absent 'a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.'" (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983)). Macaire's employment agreement does not include any provision referencing duration of his term as public relations director, or limiting the bases on which he could be terminated. *See* Nov. 27, 2012 Employment Agreements at 6. As a result, Araujo and Holie, as directors, had the ability to fire Macaire without cause. *See Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183, 187–88 (1989) (affirming board's removal of at-will employee, who also happened to be minority shareholder, without cause); *cf. Weiss*, 337 N.Y.S.2d at 411 (explaining, in context of non-profit corporation, that "[a] fortiori, a board of directors has the same freedom to remove an employee of the corporation" as it has to remove an officer). They did so, through majority vote, at the December 1, 2016 meeting. *See* Dec. 1, 2016 Resolution at 1; *see also* Driscoll Decl., Ex. JJ (letter from Araujo and Holie's counsel explaining that Macaire had been terminated as public relations director).

That Macaire is also a shareholder in JFAC does not change the calculus. *See Ingle*, 73 N.Y.2d at 188 ("A minority shareholder in a close corporation, by that status alone . . . acquires no right from the corporation or majority shareholders against an at-will discharge."). Nor does Macaire's bringing of claims of breach of fiduciary duty and tortious interference against Araujo and Holie. *See id.* (holding that allegations that officers breached fiduciary duty and tortiously interfered with employee's contract did not "support a deviation from the governing principal" that board can remove an at-will employee without cause).

Because Araujo and Holie, as directors, had the authority to remove Macaire as president and public relations director, they did not breach a contract—for the contract, even if effective, related only to their role as shareholders—or interfere with Macaire's contract with JFAC. The Court therefore enters summary judgment for plaintiffs on the breach of contract and tortious interference counterclaims.

### D. Breach of Fiduciary Duty Counterclaims (Counterclaims Three and Four)

Last, plaintiffs move for summary judgment on Macaire's two breach of fiduciary duty counterclaims. Macaire alleges that Holie and Araujo breached their fiduciary duties to JFAC by, *inter alia*, using JFAC corporate funds and manipulating corporate records for their personal benefit. *See* Answer at 34–40. The Report recommended denial of summary judgment for plaintiffs on these counterclaims, declining to consider plaintiffs' chart and bank records and finding that use of Jubilee's funds constituted a disputed fact issue. *See* Report at 15–18. Plaintiffs object, arguing that the Report erred by declining to consider the chart and bank records. *See* Pl. Obj. at 22.

While plaintiffs asserted, in their 56.1 statement, that Araujo and Holie did not exceed their personal allowance of $88,000 from 2012 to 2015, they failed to cite any evidence to support their proposition. *See* Pl. 56.1 ¶ 20. The Court nevertheless examines the record for evidence bearing on plaintiffs' motion. And, as with plaintiffs' breach of fiduciary duty claim, the Court does not decide whether plaintiffs' chart and bank records are admissible. That is because, even if those documents were admissible, there are genuine issues of material fact that preclude entry of summary judgment on the counterclaims.

The evidence adduced by Macaire, if credited, would entitle a trier of fact to find that Araujo and Holie used corporate funds for personal expense transactions that were not included in their chart. *See* Def. 56.1 ¶¶ 24–25. For example, Macaire attests, in his declaration, that

24

plaintiffs caused corporate funds to be used: (i) for their home, including $2,680 for Capri Windows and $5,000 for Long Island Weather Protection, *see* Macaire Decl. ¶ 80; *see also* McAuliffe Decl. ¶ 35 (attesting to same); Driscoll Decl., Ex. KKK (photographs of those checks); Araujo Tr. at 275–78 (describing those charges); Driscoll Decl., Ex. G ("Holie Tr.") at 66 (same); (ii) for personal Home Depot purchases, *see* Macaire Decl. ¶ 80; *see also* Holie Tr. at 65; and (iii) for cash that Araujo and Holie admitted to taking from JFAC, *see* Macaire Decl. ¶ 81; *see also* McAuliffe Decl. ¶ 36 (attesting to same); Araujo Tr. at 266 (stating that Araujo and Holie could take $250 per week in cash). Further, McAuliffe attested that the chart failed to account for a $50,000 distribution or loan that Araujo and Holie took in 2015. McAuliffe Decl. ¶ 35; *see also* Holie Tr. at 66–67 (describing taking $50,000 check from JFAC); Driscoll Decl., Ex. CC (email from Araujo to Macaire explaining that "Luc and myself took $45,000[.] That was to compensate the check you take every month[.]").

To be sure, plaintiffs dispute some of these charges. *See, e.g.*, Araujo Reply Decl. ¶¶ 3–4 (addressing charges for Capri Windows, Long Island Weather Protection, and Home Depot). But, on plaintiffs' motion for summary judgment, the Court must view the facts in the light most favorable to Macaire. The Court, drawing all inferences in his favor, finds that there are genuine issues of material fact as to the breach of fiduciary duty counterclaims and therefore denies plaintiffs' motion for summary judgment on those claims.[15]

---

[15] Plaintiffs also move for summary judgment on Macaire's accounting counterclaim (counterclaim six), although they made no objection addressing that counterclaim. Plaintiffs had argued that the accounting counterclaim is premised on the other five counterclaims, so if the Court dismissed counterclaims one through five, it must dismiss the accounting counterclaim as moot. Pl. Mem. at 2. Because the Court has denied plaintiffs' summary judgment motion as to the breach of fiduciary duty counterclaims, it declines to dismiss the accounting counterclaim.

**CONCLUSION**

For the foregoing reasons, the Court adopts the Report's recommendation in part, in that the Court denies plaintiffs' motion for summary judgment on plaintiffs' declaratory judgment and breach of fiduciary duty claims and on Macaire's breach of fiduciary duty counterclaims. The Court, however, grants plaintiffs' motion as to Macaire's breach of contract and tortious interference with contract counterclaims.

This case is now ready to proceed to trial on the remaining claims (plaintiffs' claims for a declaratory judgment, breach of fiduciary duty, conversion, and a permanent injunction) and counterclaims (Macaire's counterclaims for breach of fiduciary duty—through both a direct and derivative action—and an accounting). The Court directs the parties to confer, and, by April 24, 2020, to file a joint letter apprising the Court of the anticipated length of the trial. The Court expects then to set a schedule requiring submissions of a joint pretrial order and the other required pretrial filings set forth in the Court's Individual Rules.

The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 112.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 10, 2020
      New York, New York